190 So.2d 141 (1966)
Mrs. Camille Silvera MOLERO, Testamentary Executrix of the Succession of Manuel Molero
v.
Perry R. BASS, Howell E. Smith and John B. Connally, Individually and as Testamentary Executors of The Estate of S. W. Richardson (Sid W. Richardson), The Sid W. Richardson Foundation, Bass Brothers Enterprises, Inc., Richardson Oils, Inc., and the Prudential Insurance Company of America.
No. 2259.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1966.
Rehearing Denied October 5, 1966.
*143 Wilkinson & Wilkinson, Hugh M. Wilkinson, Jr., James Wilkinson, III, New Orleans, for plaintiff-appellee.
Provosty, Sadler & Scott, Nauman S. Scott, Richard B. Sadler, Jr., Alexandria, for defendants-appellants.
Before YARRUT, SAMUEL, and BARNETTE, JJ.
BARNETTE, Judge.
This suit arises out of the ancillary succession proceedings in which the Louisiana property of Sid W. Richardson was administered. Richardson, a domiciliary of the State of Texas, died on September 30, 1959. Pursuant to directions in his last will and testament, his executors, Perry R. Bass, Howell E. Smith, and John B. Connally, defendants herein, opened ancillary proceedings in Plaquemines Parish, presented his will for probate, and qualified as his executors in this State. The succession proceedings were opened on March 24, 1960, and remained open until June 18, 1962, when judgment was rendered homologating the final tableau of distribution and account and discharging the executors. During the more than two years the succession proceedings remained open, Richardson's vast holdings of mineral interests were sold, the gross value of his liquidated estate being $21,862,000. After payment of inheritance taxes and costs of the administration, the net value of the succession was established at $19,841,564.30, which amount was delivered in cash to Bass, Smith, and Connally in their capacity as Richardson's *144 Texas executors to be distributed to his legatees through Texas probate proceedings.
The suit before us on this appeal was filed on May 27, 1964, by Camille Silvera Molero in her capacity as testamentary executrix of the succession of Manuel Molero, who died February 23, 1962. The petition alleges a cause of action based on an assignment of mineral interests from Richardson to Molero on August 15, 1945, and a breach of that assignment agreement in 1949. Named as defendants in the suit were Bass, Smith, and Connally, both individually and in their capacities as testamentary executors of the Richardson succession. The petition sought, inter alia,[1] an order directing Bass, Smith, and Connally to show cause why the judgment rendered on June 18, 1962, should not be revoked, why they should not be ordered to return the Louisiana assets of the succession for deposit in this State, and why they should not be ordered to appear and defend the suit. The district court issued the rule to show cause as prayed for by plaintiff.
Service on these three defendants in their capacity as executors was made through the Louisiana attorney who had been appointed agent for service of process in regard to the succession proceedings when the foreign executors had qualified to appear in proceedings in this State. Defendants filed declinatory exceptions of lack of personal jurisdiction and insufficiency of service of process. They also filed a dilatory exception of unauthorized use of summary process.
The plaintiff's rule to show cause and defendants' exceptions were tried together on June 22, 1964. Judgment was rendered on the rule and exceptions on February 5, 1965, which revoked and declared null the judgment in the succession proceedings, ordered the defendants to return to Louisiana all sums realized from the sale of the succession property, and ordered them to appear and defend the plaintiff's suit. The exceptions filed by the defendants were overruled.
Defendants then moved for a new trial which was granted. After hearing on March 19, 1965, judgment was rendered, January 17, 1966, which modified the judgment of February 5, 1965, to the extent that the June 18, 1962, judgment in the succession proceedings was revoked only insofar as it discharged defendants as executors. The order directing defendants to return the succession assets to the State was omitted; but the order that defendants appear and defend the suit was reissued, and the judgment overruling the exceptions was reaffirmed. The defendants have appealed suspensively and devolutively from the January 17, 1966, judgment.
The initial issue confronting this court is raised by plaintiff-appellee in her brief wherein she contends that because the judgment issued below is interlocutory, no appeal can be taken from it. Appellee cites several cases[2] which have held that exceptions to jurisdiction in personam and to service of process are not appealable. LSA-C.C.P. art. 2083 provides as follows:
"An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, and from an interlocutory judgment which may cause irreparable injury."
The official comments following Article 2083 contain this statement:
"(a) The general concept that there is no appeal except in the case of final judgments is universal in order to prevent piecemeal appeals. [Citations omitted.] However, the right to appeal certain interlocutory *145 judgments, where irreparable injury would otherwise result, is retained in this Code.
"The 1870 Code of Practice Art. 566 states that one may appeal an interlocutory judgment when `such judgment may cause him an irreparable injury.' No attempt has been made to codify the jurisprudence in which interlocutory judgments have a final effect or may cause irreparable injury, since the jurisprudence has been largely a case by case process, rather than the development of a basic general rule."
Appellee contends that there can be no irreparable injury to defendants resulting from the judgment in question, since all the defendants have been required to do is to defend a lawsuitan obligation incurred by every defendant in every suit.
In view of the case by case process of deciding questions of irreparable injury as pointed out in the comment quoted above, we have considered the background and posture of this suit and have reached the conclusion that an appeal does lie herein. We think that when a succession has been duly administered for more than two years, during which time claims against it could have been presented; when those proceedings have culminated in a judgment homologating the final account and discharging the succession representatives; when, after the succession has been closed for almost two years, a claimant attempts to bring back nonresident former executors to defend a claim which on its face involves a 36-page petition and a notice of lis pendens which involves 95 separate items of property; then the defendant executors who have raised obvious questions of jurisdiction, service, and use of summary process are entitled to have these questions determined with finality, including an appeal from an adverse determination in the trial court, if a favorable decision on those questions would spare the defendants the burden of additional lengthy litigation. To require these defendants to defend the merits of this claim in a separate proceeding long after the succession has been closed when, but for the neglect of the claimant, it would have been heard in the regular course of the succession proceedings would be manifestly unfair and well within the meaning of the term "irreparable injury" as it appears in Article 2083. Indeed, if this claim had been timely filed in the succession proceedings, the questions now before us would not have arisen.
In holding that irreparable injury could occur from the judgment rendered below and that an appeal is available to these appellants, we do not intend to advance a new, general rule contrary to the holdings in the cases on which appellee relies. Our decision is limited to the case before us and is primarily based on the disadvantage at which this appellee has placed these appellants.
The crux of the dispute between the parties on this appeal is what interpretation should be given to LSA-C.C.P. art. 3393 which provides:
"After a succession representative has been discharged, if other property of the succession is discovered or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be reopened. The court may reappoint the succession representative or appoint another succession representative. The procedure provided by this Code for an original administration shall apply to the administration of a reopened succession in so far as applicable."
This article, which first appeared in our procedural law in the Code of Civil Procedure adopted in 1960, was designed primarily to provide a means for dealing with overlooked assets of the succession. McMahon, The Louisiana Code of Civil Procedure, 21 La.L.Rev. 1, 44 (1960); Oppenheim, Substance and Procedure: The Civil Code as affected by the Code of Civil Procedure in Matters of Succession Law, 35 *146 Tul.L.Rev. 475, 479 (1961). There has been no attempt by the codifiers or in our jurisprudence to indicate what meaning should be given to the phrase "any other proper cause" when it is relied on in an attempt to reopen a succession.
The judgment rendered in the succession proceedings on June 18, 1962, homologated the final tableau of distribution and account of the executors; they were "fully discharged and relieved from their trust and responsibilities as Louisiana Executors"; and their bond was cancelled. The account which that judgment homologated specified distribution of the net assets of the estate to the Texas executors of Richardson's estate. That judgment was final and appealable. LSA-C.C.P. art. 3337.
Two questions arise from this set of facts. First, does the article authorize the recall of previously discharged succession representatives over whom the court would not have jurisdiction otherwise? Second, does Article 3393 empower a court to revoke or modify by summary process a judgment in a succession which is otherwise final?
In regard to the second question posed, appellee contends that Article 3393 empowers the court to reexamine its succession judgment, because the phrase "any other proper cause" is satisfied by the alleged legal errors in that judgment. Specifically, appellee contends that the distribution approved violates the policies of our law which protect rights of forced heirship and community property by allowing foreign executors to remove succession assets from the state without our courts being able to determine the ultimate distribution of those assets. She further specifically contends that the delivery of the assets to the foreign executors constitutes a prohibited substitution.
In view of our opinion that the trial court has no jurisdiction over these defendants, it is unnecessary for us to consider the merits of plaintiff's contention or her right to proceed by summary process under Article 3393.
The first question posedwhether the court had the power under Article 3393 to recall the executorswas raised by defendants' exceptions to jurisdiction and service of process. A consideration of this issue necessarily begins with a recognition of the principle that apart from their capacity as executors in the succession proceedings, the courts of this State have no jurisdiction over these non-domiciliary defendants. LSA-C.C.P. art. 6 requires service of process on a foreign defendant or on his agent for the service of process in order to acquire jurisdiction over him.
Defendants were cited to appear as executors and service was made upon the attorney who was their agent in regard to that capacity. If that agency no longer existed, it would be necessary to reestablish the capacity of the defendants as executors and to revive the agency which had existed previously. Hence, the validity of the jurisdiction and of the service of process turns on the validity of the court's order recalling the executors.
LSA-C.C.P. art. 3392 provides:
"The judgment discharging the succession representative relieves him of further duty, responsibility, and authority as succession representative."
While it is true that any liability a representative may have incurred during his administration remains in effect,[3] his relation to the succession is terminated. Thus a representative may be held personally liable, but he cannot be required to represent the succession in a claim against it. In this case appellee's claim is against the succession, based on an allegation that the decedent breached a contract with plaintiff's testator. This is not a cause of action against the executors personally, and they cannot be required to defend it after their authority and responsibility in the succession proceedings has ended.
*147 Appellee contends that Article 3393 empowers the court to reopen the succession to hear the claim of a creditor and empowers it to require the discharged representative to reappear to defend the claim. A creditor who failed to present his claim timely in the succession proceedings as provided in LSA-C.C.P. arts. 3241-3249, does not thereby lose his right to enforce his claim. He does, however, lose his right to have it paid out of the assets of the succession if he does not oppose the account of the succession representative and does not appeal from the judgment homologating the final account. LSA-C.C.P. arts. 3336, 3337. Thereafter, the creditor must pursue his action against the legatees. LSA-C.C. arts. 1067, 1068. Thus we conclude that a belated claim by an alleged creditor is not a proper cause for reopening a succession.
Even if there were proper cause for reopening this succession, Article 3393 simply provides that "[t]he court may [in that event] reappoint the succession representative or appoint another succession representative." By providing for a reopening, the implication is clear that the article treats the succession in question as having been closed. If it has been closed and the succession representative discharged he is no longer before the court or subject to its jurisdiction in that capacity. LSA-C.C.P. art. 3392. We do not think Article 3393 can be interpreted to permit the compulsory recall of a discharged representative who is not willing to be reappointed, even if it did not involve revocation of a final judgment. For his reappointment to be valid he would first have to accept the reappointment and qualify again by taking a new oath and posting the required new bond. We therefore hold that the court's jurisdiction over these executors, having been terminated, cannot be reestablished by an order recalling them to reassume the office from which they have been discharged. The most the court can do in a case when "proper cause" does exist is to reappoint the discharged executors, if they are willing to accept the new appointment and qualify again, or, in case of their unwillingness to do so, to "appoint another succession representative."
The authority of the attorney for service of process as the Louisiana agent of the nonresident executors came to an end when the executors were discharged. Therefore the service on such agent was invalid. We therefore hold that the exceptions to the jurisdiction and to the service of process were good and should have been sustained.
For the foregoing reasons, the judgment appealed from is reversed, and judgment is now rendered in favor of defendants Perry R. Bass, Howell E. Smith, and John B. Connally against plaintiff, Mrs. Camille Silvera Molero, testamentary executrix of the succession of Manuel Molero, sustaining the exceptions of lack of jurisdiction over the persons of defendants and insufficiency of service of process. It is further ordered, adjudged and decreed that plaintiff's petition against them for rule to show cause be dismissed at her cost.
Reversed and rendered.
NOTES
[1] Other defendants, purchasers of the succession assets, and other demands were included in the petition, but they are not before us on this appeal.
[2] Gierczic v. Gierezic, 150 So.2d 84 (La.App.4th Cir. 1963), writ refused, 244 La. 219, 151 So.2d 692 (1963); Woodcock v. Crehan, 28 So.2d 61 (La.App.1st Cir. 1946); Rector v. Allied Van Lines, 198 So. 516 (La.App.2d Cir. 1940).
[3] Succession of Quaglino, 223 La. 171, 65 So.2d 127 (1953).