383 So.2d 55 (1980)
SUCCESSION of George E. McLENDON, Sr.
No. 14088.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1980.
Rehearing Denied May 13, 1980.
*56 Maynard E. Cush, Rollin W. Cole, Jr. by Maynard E. Cush, Shreveport, for defendant-appellant, Carrie Wainwright McLendon.
DeLaune & Blondeau by Harvey P. DeLaune and A. L. Blondeau, Bossier City, for plaintiff-appellee, Michael Wayne McLendon.
Giddens, McKenzie & Garrett by Wm. Robert McKenzie, Shreveport, for defendant-appellee, George McLendon, Jr.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied May 13, 1980.
HALL, Judge.
This appeal is from a judgment ordering that a probated will be executed and that a prior judgment of possession based on the supposed intestacy of the decedent be annulled and set aside. We affirm the judgment of the district court.
George E. McLendon, Sr. died in September 1971, survived by his widow, Carrie Wainwright McLendon, and a son by a previous marriage, George E. McLendon, Jr. On the petition of the widow and son, alleging the decedent died intestate, the succession was opened and Jack H. Kaplan, an *57 attorney and friend of the family, was appointed administrator. After some acts of administration, on the joint petition of the widow, son, and administrator, again alleging intestacy, a judgment of possession was rendered in June 1972. The widow and son were each recognized as owners of an undivided one-half interest in the community property. The widow was recognized as entitled to the usufruct of the son's one-half interest in the community property in spite of the fact that LSA-C.C. Art. 916 provides for a legal usufruct in favor of the survivor only over the share of the deceased in community property inherited by issue of the marriage between the decedent and the survivor. The son was recognized as the owner of and sent into possession of the decedent's separate property.
In 1976, after McLendon, Jr. and his wife, Mary, separated, the wife disclosed to their son, Michael Wayne McLendon, the existence of a will executed by the decedent dated January 30, 1968, which the junior McLendons had kept in a safe at their home. The will provided that the widow should receive her undivided one-half interest in the community property. One-third of the decedent's property was bequeathed in trust for the benefit of his son and the remaining two-thirds of the decedent's property was left in trust for the benefit of the son's children. The son had three children, all minors at the time of the decedent's death. The First National Bank in Shreveport was named as trustee and the widow as co-trustee. The trusts were to last for the lifetime of the beneficiaries and were designated as spendthrift trusts.
In April 1976 Michael filed a petition naming the decedent's widow and plaintiff's father as defendants, seeking to reopen the succession, to probate the will, and to set aside the prior judgment of possession. It was alleged that the parties directly participating in the administration of the succession had full knowledge of the existence of the will both prior to and subsequent to the death of the decedent and that plaintiff did not become aware of the existence of the will until March 1976. The defendants were served with citation and ordered to answer the petition within the delay provided by law. Defendants were also served with a rule to show cause why the will should not be probated and the prior judgment of succession set aside.
The rule was heard with the defendants present. The judge limited this hearing to evidence relating to the probate of the will. The authenticity of the will was established and the will was probated.
Subsequently, the defendant widow filed responsive pleadings, including (1) an exception of no cause or right of action; (2) an exception of improper use of summary procedure; (3) an exception of prescription and/or no cause or right of action; and (4) an answer. An answer in the nature of a general denial was filed on behalf of the defendant, McLendon, Jr.
Trial was held in February 1979. It was established that the will was prepared by Kaplan and the original was delivered by him to the decedent. The son testified he found the will, together with several prior wills, in decedent's safe shortly after his death. He testified that after a conference with the widow and the attorney, it was decided that the will would not be produced. He took the will home and gave it to his wife to be placed in his safe at his home. He later told his wife to destroy the will and thought she had done so. The wife testified that her husband brought the will home in an envelope after his father's death, that she did not read the will, and that she put it in the safe and did not destroy it as she had been instructed to do. After the separation from her husband she discussed the matter with her attorney, removed the will from the safe, and delivered it to the attorney or to her son, who had not previously known of the existence of the will. The son testified this was the first knowledge he had of the existence of the will.
The decedent's widow testified she had no knowledge of the existence of the will, although she knew her husband had made wills in the past. She found no will when she looked after her husband's death. Kaplan *58 testified he instructed the widow and son to look for the will after decedent's death. He, of course, had knowledge of decedent's signing of the will he prepared in 1968, but testified he had reason to believe the will might have been destroyed because the decedent had changed his will on several occasions, had asked Kaplan to give him his file copy of the will which was done, and had talked to Kaplan about making a new will, which was never done.
During the trial Mary McLendon, as tutrix of one of the grandchildren who was still a minor, and the other grandchild, who had then become of age, were added as parties plaintiff at the court's suggestion without objection.
After trial the court overruled all the exceptions, annulled and set aside the prior judgment of possession, and ordered the will previously probated be executed. The defendant widow, but not the defendant son, appealed.
On appeal, the defendant-appellant specifies that the the trial court erred in ordering the will probated and executed and in setting the judgment of possession aside; specifically, in failing to sustain one or more of the exceptions filed by the defendant.
The grounds for the first exception of no cause or right of action were that the petition disclosed no cause or right of action to reopen the succession under LSA-C.C.P. Art. 3393 in that the petition did not allege the discovery of additional property, and the discovery of a will after a succession is concluded is not "any other proper cause" for reopening a succession under the article. The exception is clearly without merit. Discovery of a valid will following the administration of an intestate succession is certainly a proper cause for reopening the succession under LSA-C.C.P. Art. 3393, especially where the circumstances surrounding the succession indicate fraudulent conduct. Presentation of a will, even if the party in possession of the will considers it invalid, is required by law. LSA-C.C.P. Art. 2853. A will shall be admitted to probate if a petition therefor is filed within five years of the judicial opening of the succession. LSA-C.C.P. Art. 2893.
The exception of improper use of summary procedure is also clearly without merit. The probate proceedings were held pursuant to an order and rule to show cause, entirely consistent with LSA-C.C.P. Arts. 2856, 2881, 2882, 2887, and 2890. Defendants were present and actually made no objection to the probate of the will. Thereafter the proceedings were conducted as an ordinary proceeding pursuant to citation and service of process, responsive pleadings, and trial on the merits some three years after filing of the petition.
The combined exception of prescription and/or no cause or right of action is likewise without merit. The grounds for that exception are that this action for nullity of a judgment for fraud or ill practices under LSA-C.C.P. Art. 2004 was not brought within one year of discovery by the plaintiff of the fraud or ill practices as required by the article. Assuming the applicability of the one-year prescriptive period of LSA-C.C.P. Art. 2004 to this action, the evidence firmly establishes that the plaintiff did not learn of the existence of the will and the fraudulent conduct of his father[1] in deliberately withholding the will until the early part of 1976, less than one year prior to the filing of the action to annul the judgment of possession. It was not established, as contended by appellant, that Mary McLendon was aware that the actions of her husband were fraudulent and, in any event, her knowledge at an earlier date would not preclude a later action by the grandchildren who were minors at the time the fraudulent conduct took place and who did not learn of the fraud and ill practices until less than one year prior to bringing suit.
*59 The judgment of possession having been rendered on incorrect allegations and affidavits of intestacy, and a valid will having been discovered and offered for probate within five years from the date of the opening of the succession and within one year after the existence of the will was discovered by plaintiff, the judgment of the district court ordering execution of the probated will and annulling the judgment of possession is correct and is affirmed at appellants' costs.
Affirmed.
NOTES
[1] The trial court found fraud committed by "one or more persons" in this matter. McLendon, Jr.'s fraud is clearly established; there is no need to consider whether the evidence established fraud by others. The result would be the same even in the absence of fraud on the part of anyone.