488 So.2d 1303 (1986)
SUCCESSION OF Anaclet LASSEIGNE,
Anne B. Lasseigne, Lorraine Alvarez, Elsie Lasseigne Hebert and Lucille Lasseigne Defendants-Appellants.
No. 85-447.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
Rehearing Denied June 11, 1986.
*1304 George W. McHugh, Jr., Martinville, for defendants-appellants.
Perrin, Landry, etc., Allan L. Durand, Lafayette, Haney, Akers & Segura, J. Phil Haney, New Iberia, for plaintiff-appellee.
Before DOMENGEAUX and YELVERTON, JJ., and JACKSON, Judge Pro Tem.[*]
JACKSON, Judge Pro Tem.
On February 15, 1961 Anaclet Lasseigne and his wife Ann Bernard Lasseigne donated 47.5 arpents of land to their son Louis Clete Lasseigne. The act of donation provided that the property was intended as an extra portion for the donee and as an advantage to be received by him over and above his co-heirs in the settlement of Anaclet Lasseigne's estate. It was agreed between them that the property had a value of $8,000.00 at the time of the donation. Louis Clete Lasseigne took possession of the property.
On February 17, 1972 Anaclet Lasseigne died testate. His will provided;
"all the donations made by me before my death to my children should be credited to each as part of his or her inheritance so that all of them will share equally."...
"I want my son, Clete, to have the use of the barns, teniment house and sheds."
According to the sworn descriptive list of properties filed in the succession, at the time of his death Mr. Lasseigne owned an undivided one-half interest in 160 arpents of land, mineral interest on the 160 arpents less that portion donated to his children by a prior act of donation; mineral interest under the 47.5 arpents previously donated to Clete, less the mineral royalty given to his children prior to his death; and other property not relevant herein. In view of the confusion created by the provisions of Mr. Lasseigne's will, all of the heirs and his widow agreed to a Judgment of Possession which provided that Clete was to be excluded from the ownership of the 160 arpents of land. He was recognized as heir and given the right of ownership, subject to the usufruct in favor of his mother of the remainder of the community property. The Judgment of Possession further provided that he was to be granted the use and access to the sheds located on the immovable property to which he was excluded from ownership.
The parties went into the possession of their respective properties according to the Judgment of Possession. Thereafter, in 1981, Anne B. Lasseigne, widow of Anaclet Lasseigne brought suit seeking to have Louis Clete Lasseigne evicted from the 160 arpents of land. The case came before us and a judgment was affirmed in favor of Anne Lasseigne and against Louis Clete Lasseigne ordering his eviction from certain portions of the property. [See our decision in Lasseigne v. Lasseigne, 393 So.2d 435 (La.App. 3rd Cir.1980) ].
On April 23, 1982, some ten years after his fathers death and the Judgment of Possession, Louis Clete Lasseigne filed a motion in the District Court seeking to reopen the succussion and to amend the Judgment of Possession on two grounds:
(A) the judgment erroneously failed to place him in the possession of an equal undivided interest of the 160 arpent tract of land and
(B) it failed to recognize a trust established in the will and testament requiring that the interest of his sister Lucille be place in trust.[**]
*1305 The District Court, following a hearing in the matter, overruled the defendants Exception of Prescription and held that paragraph 6 of the Petition for Possession wherein Clete allegedly renounced his one-fourth interest in the real estate could not serve as renunciation because it was not pursuant to the formalities of law and that the testator, having previously donated in proper form the 47.5 arpents of land, could not revoke the donation in his will. Thereafter, two separate actions for Declaratory Judgment were brought by the surviving spouse and daughters of Anclet Lasseigne; one seeking to have a declaration that the 1961 inter vivos donation to Louis Clete Lasseigne of the 47.5 arpents of land was in excess of the disposable portion and should thus be brought back into the estate and the other sought to challenge the testamentary bequest to Clete for the use and access to the tenement house, barn and sheds located on the 160 arpent tract of land which formed the community between Anaclet and his wife. The trial court ruled that the heirs had lost their right to collation by the passage of time, and that Anaclet Lasseigne could not encumber his wife's undivided half interest in the community with a use in favor of Clete of the barns and sheds on the community property. The trial court signed a judgment sending Clete Louis Lasseigne into possession of an undivided one-fourth interest of the decedents one-half interest in the 160 arpent tract of land; granting Ann B. Lasseigne the use and enjoyment of an undivided one-half interest into the barns, and tenement houses located on the 160 acre of tract. From this and the other provisions of the judgment the widow and daughters have perfected this appeal.
It seems to us that a resolution of the issues in this matter depends upon the validity of the trial court's action in reopening the succession and allowing the Judgment of Possession to be amended some ten years after it was signed. In his reasons for judgment the trial court indicated that he could find no authority for the proposition that the Judgment of Possession could not be amended because of the passage of time. However we are of the opinion that the trial court committed reversible error in this regard.
Art. 3393 of the Louisiana Code of Civil Procedure authorizes the reopening of a succession following a Judgment of Possession. In Danos v. Waterford Oil Co., 225 So.2d 708, writ denied 254 La. 856, 227 So.2d 595, the court held that where there had been no previous administration of the decedents succession because the succession had been unconditionally accepted by the heirs, this article providing for the reopening of the succession was not applicable. Thereafter the Legislature added subdivisions B and C to the article impliedly modifying this holding. However this article was designed primarily to provide a means for dealing with overlooked succession assets. Molero v. Bass, 190 So.2d 141 (1966); or the discovery of a valid will following an administration, Succession of McLendon, 383 So.2d 55 (1980) Succession of Riggio, 395 So.2d 361 (1981).
A succession may be reopened for two reasons: (1) as a matter of law on the discovery of property inadvertently omitted from the succession; and (2) "any other proper cause". In Succession of Yancovich, 289 So.2d 855 (La.App. 4th Cir.1974) it was held that the alleged discovery seven years after the closing of the succession of facts showing that the succession inventory may have incorrectly adjudicated property to an alleged non-existence community of acquets and gains was not sufficient "other proper cause" under Article 3393 to open the succession.
There is further ample reason not to reopen this succession. Quoting again from Waterford Oil Co. cited above:
"our jurisprudence appears well settled that at the death of an individual his succession exists as a separate, distinct legal entity until terminated by proceedings had pursuant to administration by an administrator or executor, or its unqualified acceptance by all of the heirs concerned".
....

*1306 "Also settled is the issue that once all the heirs of a succession have accepted unconditionally by taking possession of the property, selling a portion thereof and partitioning other parts among themselves, and have committed acts of ownership and heirship indicating acceptance pure and simple, the succession ceases to exist."
We conclude that there was no basis to reopen this succession since there was no property omitted from it, and no other proper cause shown which would allow it to be reopened. No creditor was appearing to demand payment of a debt, no overlooked assets sought to be recovered for distribution among the heirs had been found and all of the heirs had purely, simply and unconditionally accepted this succession. Thus the action of the trial court in reopening it was error, and accordingly, for reasons cited, the original Judgment of Possession is ordered reinstated. Cost of this appeal are to be assessed against Clete Lasseigne.
REVERSED AND RENDERED.
NOTES
[*] Judge Robert P. Jackson of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[**] This matter was litigated and resolved by the District Court and in argument before us, the parties have agreed that the decision of the trial court is final in this regard.