631 So.2d 614 (1994)
ESTATE OF Oscar SYLVESTER.
No. 93-731.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*615 Clyde Fontenot, Christopher Brent Coreil, for James Warren Sylvester, etc.
J. Wendel Fuselier, for Beth Christ et al.
Before GUIDRY and YELVERTON JJ., and BERTRAND, J. Pro Tem.[*]
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
This suit stems from a controversy among the heirs of Oscar Sylvester, a businessman who died intestate on February 9, 1989. He was survived by two adopted sons, appellees *616 James Warren Sylvester and Lee Oscar Sylvester, hereinafter referred to as Jimmy and Lee. He was also survived by five grandchildren who are the children of Jerry Sylvester, a natural son who died in 1969. Subsequent to Oscar Sylvester's death, one of the grandchildren died, leaving a minor child who is represented in this succession by her mother. Appellants, the four grandchildren and one great-grandchild, will be collectively referred to herein as the grandchildren. Oscar Sylvester was also survived by his fifth wife, Annie Sylvester, who is not a party to the dispute before us, but who is the mother of appellee, Lee Sylvester.
In an effort to amicably settle the succession after years of apparently bitter negotiations, the heirs entered into a compromise agreement which was signed by all parties on March 30, 1992. One week later, a judgment of possession, which incorporated and referenced the terms of the compromise agreement, was rendered, and the heirs were put into possession of their shares of the estate which consisted primarily of significant cash, real estate, and stock.
The controversy presented in this appeal concerns an amendment to the judgment of possession which the trial judge granted after a contradictory evidentiary hearing. In essence, Jimmy and Lee sought to have the judgment amended because it evidenced an unequal distribution of estate assets due to the exchange of corporate stock and cash after the sale of certain real estate. Specifically, Jimmy and Lee had agreed to forego their shares of stock in Circle S Corporation in exchange for the cash value of the stock. All the heirs agreed in the compromise agreement that the cash would be distributed after the sale of what has been referred to as the Industrial Park property.
This dispute arose when the attorney for the grandchildren sent to Jimmy and Lee a proposed distribution of proceeds for the pending sale of the Industrial Park property. Jimmy and Lee testified that they had agreed to sell their stock to the grandchildren. Accordingly, they expected their cash to come from the grandchildren's share of the sale proceeds. Conversely, the attorney for the grandchildren proposed a cash distribution to Jimmy and Lee from the full sum of the sale proceeds, with an even distribution of the remaining proceeds to each of the three roots: Jimmy, Lee, and the grandchildren.
The mathematical difference in these two distributions is financially significant. Assuming the Industrial Park property sells for $210,000.00 and the Circle S Corporation stock is worth $87,922.00 ($1.00 per share), as suggested in the record, the following distributions can be made. Under the grandchildren's proposal, they receive 87,922 shares of stock and $50,461.78 (1/3 of the sale proceeds after Jimmy and Lee are given cash for their stock), while Jimmy and Lee each receive $29,307.33 as their share of the cash value of the stock, plus $50,461.78. The grandchildren's inheritance value, therefore, is $138,383.38, consisting of cash and stock, while Jimmy and Lee each have only $79,769.11 in cash.
Under the proposal by Jimmy and Lee, the property sale proceeds are divided equally in three, $70,000.00 to each root, and then the grandchildren pay Jimmy and Lee each $29,307.33 for their stock. The grandchildren are left with $11,385.33 in cash and stock worth $87,922.00, for a total inheritance value of $99,307.33. Jimmy and Lee each have $99,307.33 in cash.
As a result of this discrepancy, Jimmy and Lee filed a petition to amend the judgment of possession in which they sought a clarification of the method of distribution of the Industrial Park sale proceeds. After an evidentiary hearing, the trial judge ruled in favor of Jimmy and Lee and ordered an amendment of the judgment of possession. The trial judge found that the language of the compromise agreement upon which the judgment of possession was based did not reflect the true intent of the parties and was "obviously unclear and ambiguous and erroneous." Accordingly, both the compromise agreement and the judgment of possession were amended to provide for payment to Jimmy and Lee for their stock out of the grandchildren's share of the sale proceeds from the Industrial Park property.
*617 In this appeal, the grandchildren contend the trial judge erred in amending the judgment of possession because he was not legally authorized to do so. They argue the trial judge made a substantive change in the judgment in contravention of La.C.C.P. Art. 1951. They also argue the language of the judgment and compromise agreement was clear and unambiguous and accurately reflected their intentions in signing the documents. Accordingly, they vehemently oppose the position asserted by Jimmy and Lee and pursued this appeal seeking reinstatement of the original judgment of possession.
In order to resolve the issues raised in this appeal, it is necessary to briefly discuss the background from which this dispute arose. During the administration of this succession, the heirs did not get along and argued over a variety of issues. By February of 1992, negotiations had broken down to the point that no one was on speaking terms with anyone else.
Lynn Lejeune, who had been hired by the administrator to serve as secretary for the succession, took it upon herself to negotiate or attempt a settlement of the estate. She devised several proposals and discussed them informally and individually with the heirs, or their attorneys or representatives. When Jimmy and Lee were told by Lejeune that the grandchildren had agreed to buy their stock in Circle S Corporation, or that they could sell their stock to the grandchildren, it appeared that a settlement may be possible. Finally, on March 23, a proposed distribution of the entire estate was prepared by Lejeune and signed by Jimmy, Lee and Stella May, representing the grandchildren, which included the following language:
JWS/LOS [Jimmy and Lee] EACH RECEIVE $29,307.33 FROM THE SALE OF INDUSTRIAL PARK, ETC., BEFORE A DISTRIBUTION TO EACH ROOT.
Without realizing the import of this language, Jimmy and Lee signed the proposal. Stella May testified that she signed the proposal after Lejeune told her it included an "advantage" for the grandchildren. She said that a reduction in the grandchildren's share of the sale proceeds for payment to Jimmy and Lee would have been "totally unacceptable."
After the proposal was signed, Lejeune brought it to John Pucheu, attorney for the succession. Lejeune and Pucheu discussed the proposal and Pucheu then expeditiously drafted a compromise agreement, petition for possession, and judgment of possession, all of which were signed within the next two weeks. The compromise agreement states in pertinent part:

II. AGREEMENT TO SELL CERTAIN TRACTS OF LAND
* * * * * *
Appearers further agree that the first $58,614.66 received from the sale of these tracts shall be distributed to James Warren Sylvester and Lee Oscar Sylvester in lieu of their receipt of any stock in Circle S Corporation as provided in Section III below.

III. AGREEMENT REGARDING STOCK IN CIRCLE S CORPORATION
Appearers agree that all of the stock owned by the Succession in the Circle S Corporation will be distributed to the Heirs of Jerry Sylvester, Sr. [the grandchildren]. This stock is declared to have a value of $87,922.00. Because James Warren Sylvester and Lee Oscar Sylvester will not receive any of this stock, they will each receive the sum of $29,307.33 as a cash distribution in lieu of their share of this stock.
Similarly, the judgment of possession states as follows:
IX. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, in accordance with the Compromise Agreement Regarding Distribution of Estate, Sale of Land and Related Matters, made part of the Petition for Possession, the heirs shall be personally obligated to sell the following described property and that James Warren Sylvester and Lee Oscar Sylvester shall be granted a judicial mortgage thereon and each entitled to receive the sum of TWENTY NINE THOUSAND THREE HUNDRED SEVEN AND 33/100 ($29,307.33) DOLLARS from the sale proceeds, in preference to any and all *618 other claims. Thereafter, the balance of the sale proceeds shall be divided among the heirs in the proportions set forth herein.
Lejeune testified that the grandchildren were supposed to buy Jimmy and Lee's stock. Pucheu testified that Jimmy and Lee were to receive extra cash from the sale of their stock to the grandchildren. However, it is clear that none of the documents drafted by Lejeune and Pucheu evidenced that intention. The trial judge amended the judgment of possession and reformed the compromise agreement to comply with the intentions of Lejeune and Pucheu and the expectations of Jimmy and Lee. Apparently, the trial judge did not find Stella May's testimony concerning an advantage to the grandchildren to be credible.

LEGAL ANALYSIS
In Succession of Morvant, 578 So.2d 549 (La.App. 3d Cir.1991), a judgment of possession was entered by the trial judge based on a joint stipulation of all parties which was read into the record. Subsequent to the signing of the judgment, two of the heirs moved for a new trial, alleging that their understanding of the joint stipulation differed from the text of the judgment of possession. The heirs argued that the stipulation and judgment should be set aside because of an error of fact. The trial judge denied the motion for new trial, but this Court reversed and remanded, finding that the judgment of possession was based on a compromise agreement which two of the heirs were seeking to rescind. Whether the heirs had valid cause to rescind the agreement should have been considered by the trial judge after a contradictory hearing. Similarly, in Succession of Dickson, 227 La. 838, 80 So.2d 433 (1955), a forced heir acknowledged in the petition for possession her entitlement of ¼ of her son's estate rather than the 1/3 portion which the law allowed her. She sought to correct her legal error on appeal. The court held that an appeal was not the proper procedural mechanism for correcting or amending the judgment of possession, as a hearing would be required for a full consideration of the matters now in dispute. The heir's appeal was dismissed.
In the case sub judice, Jimmy and Lee did not seek a rescission of the compromise agreement, but rather, they requested merely a reformation of the agreement to comply with their contractual intentions as proved by parol evidence. Further, they sought a corresponding amendment in the judgment of possession. In keeping with the rationale of the Morvant case, the trial judge properly conducted a contradictory hearing in order to ascertain the true intent of the parties. As we stated in Morvant, "Evidence is therefore admissible to determine what the parties intended to regulate by the transaction or compromise." 578 So.2d at 554-555. We conclude, therefore, that the contradictory hearing conducted by the trial court was procedurally proper.
We now turn to the merits of the trial judge's decision wherein he reformed the compromise agreement and amended the judgment of possession to comply with the intentions of Jimmy and Lee.
Under Louisiana law, a party may seek reformation of a written instrument that does not reflect the true intent of the contracting parties. In Pat S. Todd Oil Co., Inc. v. Wall, 581 So.2d 333 (La.App. 3d Cir.), writ denied, 585 So.2d 569 (La.1991), we stated:
The primary criteria for the reformation of an instrument by parol evidence is that there must be clear proof of the antecedent agreement as well as an error in committing it to writing. The error or mistake must be mutual, and the burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence.
581 So.2d at 336
Additionally, a written instrument may be invalidated for unilateral error that pertains to a fact which was a principal cause for making the contract, if the other party knew or should have known that it was a principal cause. Twin City Pontiac, Inc. v. Pickett, 588 So.2d 1125 (La.App. 2d Cir. 1991).
Specifically herein, the parties agreed, as evidenced in the compromise *619 agreement and in the petition for possession, that the estate assets as a whole should be divided equally. Jimmy, Lee, Lejeune, and Pucheu all testified, via parol evidence, that the grandchildren would buy the stock. Even Stella May, who acted on behalf of the grandchildren, testified that she thought the "advantage" to the grandchildren merely equaled out other discrepancies in distribution, although this testimony was not supported or otherwise proved with reliable evidence. The principal cause of the compromise agreement was an equal distribution of the estate assets, yet the language of the agreement did not confect an equal distribution. The trial judge considered this a mutual error of fact which constituted proper cause for reforming the compromise agreement. This finding was not manifestly erroneous.
We shift our focus now to the amended judgment rendered by the trial court. A party may request an amended judgment under La.C.C.P. Art. 1951 which allows for alteration in the phraseology, but not the substance, of a judgment, and allows for corrections in errors of calculation. Additionally, as with any written agreement, a consent judgment, which is essentially a bilateral contract between the parties, may be annulled for unilateral error of fact which was a principal cause of the agreement, where the other party knew or should have known it was the principal cause. See Nugent v. Stanley, 336 So.2d 1058 (La.App. 3d Cir.1976); Martin Forest Products v. Grantadams, 616 So.2d 251 (La.App. 2d Cir.), writ denied, 619 So.2d 580 (La.1993); State, Dept. of Transportation & Development v. K.G. Farms, 402 So.2d 304 (La.App. 1st Cir.), writ denied, 406 So.2d 625 (La.1981).
Specifically in the law of successions, La.C.C.P. Art. 3393 allows a succession to be reopened if other property of the succession is discovered or for any other proper cause. Judgments of possession are often amended when additional property is discovered or a will is located. However, the jurisprudence reveals that judgments of possession are rarely amended for other grounds. For instance, successions are not reopened to allow for collation, see Succession of Trouard, 281 So.2d 863 (La.App. 3d Cir.1973); for the assertion of forced heirship rights, see Succession of Lasseigne, 488 So.2d 1303 (La. App. 3d Cir.), writ denied, 494 So.2d 327 (La.1986) and Averette v. Jordan, 457 So.2d 691 (La.App. 2d Cir.1984); or for error of law, see Succession of Williams, 418 So.2d 1317 (La.1982) and Succession of McCarthy, 583 So.2d 140 (La.App. 1st Cir.1991).
In Succession of Simmons, 527 So.2d 323 (La.App. 4th Cir.), writ denied, 529 So.2d 12 (La.1988), the court relied on prescription as a bar to a second wife's action to correct a judgment of possession which erroneously classified certain stock as property belonging to the community between the decedent and his first wife. The court found the second wife had waited more than a year after discovery of the error to request a correction of the judgment of possession. Compare Succession of Yancovich, 289 So.2d 855 (La.App. 4th Cir.1974), which involved similar facts but was decided on the proper cause provision of Art. 3393 rather than prescription.
We conclude that a judgment of possession may be amended but only in very limited circumstances. The proper procedure must be employed, which propriety depends on the circumstances of the particular case. Further, as was stated in the case of Danos v. Waterford Oil Co., 225 So.2d 708 (La.App. 1st Cir.), writ denied, 254 La. 856, 227 So.2d 595 (1969), the language of La. C.C.P. Art. 3393 is "to be invoked and applied within the sound discretion of the trial court depending upon the circumstances peculiar to each individual case." 225 So.2d at 714. Analogously, in Succession of Trouard, supra, we discussed the grounds for annulment of a judgment and held that an annulment may be granted "if it is shown that the enforcement of the judgment would be unconscionable and inequitable and would deprive the litigant who seeks the annulment of legal rights to which he is entitled." 281 So.2d at 865. Considering this jurisprudence, we find that if a trial judge finds good cause for reopening a succession, or, by extension, for amending a judgment, and the correct procedure was used, then the appellate court must give due deference to the decision of the trial judge and should only reverse if manifest error is found.
*620 In this case, the aggrieved heirs sought to have the compromise agreement reformed and the judgment of possession amended by the trial court after an evidentiary hearing. The trial judge heard the evidence and concluded that the agreement and judgment should be amended to comply with the intent of the parties.
In an effort to make the judgment of possession, which was based on the compromise agreement, comply with the intent of the parties, the trial judge amended the judgment as requested by Jimmy and Lee. Both decisions, to reform the agreement and to amend the judgment, were within the trial judge's discretion and were not manifestly erroneous, given the circumstances and evidence presented herein.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the grandchildren.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
I agree that the judgment of the trial court should be affirmed. I also agree that, under the circumstances of this case, the trial court did not err in amending the judgment of possession after contradictory hearing. However, even if, as urged by appellants, the trial court was procedurally without authority to amend the judgment of possession, considering the ambiguity of the compromise agreement and judgment of possession, appellees, Jimmy and Lee, were entitled, after contradictory hearing, to a declaratory judgment pursuant to La.C.C.P. art. 1871 et seq. clarifying and declaring their rights under the compromise agreement and judgment of possession. For these reasons, I respectfully concur.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.