hPLOTKIN, J.,
dissenting with written reasons.
Because I believe that the trial court abused his discretion in denying the petition filed by Farrell J. Chatelain to reopen his mother’s succession, I respectfully dissent from the majority decision affirming that judgment. For the reasons discussed below, I would reverse and grant Farrell’s Petition to Reopen.
Farrell mother, Cecile Ducote Chatelain died on May 6, 1997, leaving a Last Will and Testament dated March 14, 1988. That will bequeathed Ms. Chatelain’s entire estate to her two sons, Farrell and Nelson, “to share and share alike,” subject to the following provision:
I have made loans to Farrell J. Chate-lain totalling [sic] $20,771.03, plus interest from February 1,1988, to the date of repayment. In the event any part of the principal and interest is still due on said loan or on any new loan or loans which I may make to my son Farrell, then in such event, such balance will be debited or charged to Farrell J. Chatelain’s portion of my estate and credited to Nelson J. Chatelain’s portion of my estate. After this accounting is completed, the balance and residue of my estate will then be shared by my two sons.
The will also appointed Farrell and Nelson as co-executors of Ms. Chatelain’s estate, but provided that one of her sons could *623 serve as executor “in the event [the other] one is unwilling or unable to act as such.”
| ?!Three weeks after his mother’s death, on May 27, 1997, Nelson wrote a letter to Farrell concerning the settlement of her estate. That letter included the following paragraph:
If you concur perhaps we can swap information of monies that we have borrowed or used from mother or the estate that has not been accounted for or paid back. I have numerous documents and notes over the past 10 years of funds that were lent to you with very little evidence of repayment. Since you have a clear paper trail and know the facts, you would be in a better position to provide an accurate accounting of this information.
On August 15, 1997, Nelson’s attorney, Wayne M. Babovich, wrote a letter to Farrell, enclosing a copy for Farrell’s review of succession documents he and Nelson intended to file. In the letter, Mr. Babo-vich stated as follows:
You will note that pursuant to law we have deducted from Nelson’s share of your mother’s estate the $20,000 advanced to him during her lifetime. Similarly, we have deducted those monies loaned or advanced to you by your mother as reflected in your mother’s will, your correspondence with her, and the accounting provided to us in connection with her interdiction. We will be more than happy to answer any questions you have. However, we believe it important to proceed and unless we hear from you with problems, this matter will be filed immediately.
Accordingly to Mr. Babovich’s letter, he and Nelson anticipated forwarding Farrell a check for $24,749.20 by August 21, 1997. Farrell received the documents on August 17,1997.
On August 21, 1997, Nelson filed the following documents: (1) Petition for Probate of Statutory Will, (2) Petition for Appointment of Executor, (3) a copy of Ms. Chatelain’s death certificate, (4) a copy of an Inheritance and Estate Transfer Tax Receipt, (5) a copy of his May 27, 1997, letter to Farrell, (6) Letters Testamentary, (7) Petition for Possession, (8) Affidavit of Death and Heirship, (9) Sworn Detailed Descriptive List, (10) Oath of Executor, (11) Last Will and Testament of Cecile Ducote Chatelain, (12) Affidavit for a Statutory Testament, (13) Judgment of Possession. On the same day they were filed, the trial judge [..¡signed the Petition for Probate of Statutory Will, the Petition for Appointment of Executor, the Letters Testamentary, and the Petition for Possession.
In his Petition for Probate of Statutory Will, Nelson stated that he was named in the will as Testamentary Executor without bond. In his Petition for Appointment of Executor, Nelson noted that he had sent a May 27, 1997, letter to Farrell and asserted that Farrell “is unwilling to act as a Co-Executor,” “due to his failure to communicate.” In his Petition for Possession, Nelson stated that the following loans had been made by his mother to Farrell: (1) a February 1, 1988, loan in the amount of $20,771.03 plus 10 percent interest, with an amount due and owing on August 1, 1997 of $50, 425; and (2) a November 2, 1989, loan in the amount of $5,650, with an amount due and owing on August 1, 1997 of $11,744.25. The Petition for Possession also listed gifts from Ms. Chatelain to Farrell totaling $13,311.58, subject to collation. Accordingly, Nelson noted in his Petition that “$75,480.83 should be credited to Farrell J. Chatelain’s portion of the estate pursuant to the terms of the last will and testament and the law of collation LSA— C.C. 1227 et seq.” The Petition also noted a $20,000 gift from Ms. Chatelain to Nelson, which was alleged to be subject to *624 collation by taking less. According to the Sworn Detailed Descriptive List, the Total Assets of Ms. Chatelain’s estate were valued at $166,862.98. When reduced by the $11,993.91 of Liabilities, the Total Net Estate was $154,369.07.
On August 25, Mr. Babovich sent Farrell a letter and two checks dated August 22, 1997, for $24,749.20 and $1,136, respectively. On August 28, 1997, Duncan S. Kemp, III, an attorney representing Farrell wrote a letter to Nelson’s attorney, Mr. Babovich, relative to Farrell’s “concerns” about his mother’s succession. On September 12, 1997, Mr. Babovich answered Mr. Kemp’s letter, noting that Farrell and Nelson “may have settled their differences amongst themselves.” Mr. Ba-bovich sent another letter to Mr. Kemp dated October 20, |41997. Mr. Kemp answered by letter dated October 22, 1997, and then sent another letter on December 18, 1997. Mr. Babovieh’s next correspondence was January 14, 1998; that letter included a check to Farrell in the amount of $13,305. More correspondence from Mr. Kemp to Mr. Babovich occurred on June 18, 1998. Mr. Babovich sent a letter and a check for $509.94 made out to Farrell on June 25,1998.
On July 31, 1998, Farrell filed a Petition to Reopen Succession and for Appointment of Executor. Among the allegations in Farrell’s petition were the following: (1) that Nelson, who is allegedly a non-resident of the State of Louisiana, failed to qualify for appointment as executor of the estate under the provisions of La. C.C.P. art. 3097 because he failed to appoint a resident agent for service of process; (2) that Nelson’s allegation that Farrell was unwilling to act as co-executor was untrue; (3) that Nelson qualified as testamentary executor without administration without Farrell’s knowledge or consent in violation of La. C.C.P. art. 3031; (4) that the $20,771.03 loan Farrell received from his mother in 1988 had prescribed and therefore was no longer due and owing at the time of his mother’s death; (5) that, assuming the loan should be treated as a gift, the interest on that gift should not be collated; (6) that the $5,650 loan he received from his mother had been paid in full at the time of his mother’s death; and (7) that his mother had not made gifts to him in the amount of $13,311.58 as stated in the Petition for Possession. On August 3, 1998, the trial judge denied Farrell’s Petition to Reopen, finding that a hearing on the matter was necessary. On October 5, 1998, Nelson filed an Exception of No Right of Action and Motion for Expedited Hearing. The trial court denied the Exception of No Right of Action on November 10, 1998. On January 12, 2000, the trial court denied Farrell’s Petition to Reopen Succession.
La. C.C.P. art. 3393, relative to Reopening of succession, provides, in pertinent part, as follows:
IsA. After a succession representative has been discharged, if other property of the succession is discovered or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it many direct, may order that the succession be reopened.
# Hí ❖ ❖ sfc
B. After formal or informal acceptance by the heirs or legatees or rendition of a judgment of possession by a court of competent jurisdiction, if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any *625 succession proceedings had been filed in court.
As noted by the trial judge and by the majority in this case, no new property has been discovered, so the only reason Ms. Chatelairis succession may be reopened is “for any other proper cause.” Also as noted by the majority, “other proper cause” for reopening a succession has indeed been very strictly construed by Louisiana courts, which have granted Petitions to Reopen successions only in very limited circumstances, as demonstrated by the cases cited by the majority. The Louisiana Supreme Court has explained as follows:
Courts have found “other proper cause” under LSA-C.C.P. art. 3893 to exist under extremely limited circumstances, such as where a valid will is discovered after the administration of an intestate succession. Succession of McLendon, 383 So.2d 55 (La.App. 2nd Cir.1980). In Estate of Sylvester, where the trial court amended a judgment of possession because it evidenced an unequal distribution of estate assets that was not in accordance with the intent of the parties, the court of appeal applied the jurisprudence interpreting LSA-C.C.P. art. 3393 and noted that judgments of possession are rarely amended for grounds other than the discovery of additional property or new wills. Estate of Sylvester, 93-731, p. 5 (La.App. 3d Cir.2/2/94), 631 So.2d 614, 619. As stated in Sylvester, successions are not reopened to allow for collation, see Succession of Trouard, 281 So.2d 863 (La.App. 3d Cir.1973); for the assertion of forced heirship rights, see Succession of Lasseigne, 488 So.2d 1303 (La.App. 3d Cir.), writ denied, 494 So.2d 327 (La.1986) and Averette v. Jordan, 457 So.2d 691 (La.App. 2nd Cir.1984); or for error of law, see Succession of Williams, 418 So.2d 1317 (La.1982) and Succession of McCarthy, 583 So.2d 140 (La.App. 1st Cir.1991).
Succession of Villarrubia, 95-2610, p. 6-7 (La.9/5/96), 680 So.2d 1147, 1150 (footnote omitted).
| ^However, the instant case is clearly distinguishable from Villarrubia and from all the cases cited by the majority because Farrell’s Petition to Reopen contains serious charges that Nelson violated two different provisions of Louisiana succession law when he opened his mother’s succession. First, Farrell claims that Nelson, a non-resident, failed to meet the requirements of La. C.C.P. art. 3097(4) when he failed to appoint a resident agent for the service of process. Under that provision, Nelson was disqualified from acting as executor or his mother’s estate, if Farrell’s allegations are true. Second, Farrell claims that Nelson violated La. C.C.P. art. 3031 when he petitioned to be sent into possession of his mother’s estate without administration without Farrell’s permission. Under that provision, a court may send legatees into possession without administration of the succession only “on the ex parte petition of all of the general and universal legatees,” with some exceptions not applicable to this case. Clearly, Farrell, who was a legatee under his mother’s will, was not a party to Farrell’s Petition for Possession.
My review of the jurisprudence on this issue indicates that no Louisiana court has ever considered the exact issue presented by the instant case — i.e., whether violation of Louisiana succession law by a succession representative is sufficient “other proper cause” for reopening a succession. However, In re Richardson’s Estate, 214 So.2d 185 (La.App. 4 Cir.1968) involved a Petition to Reopen a succession under La. C.C.P. art. 3393 on the basis of three allegations, including the following: “To *626 seek recision [sic], on grounds of fraud and failure of consideration, of purported dispositions of immovable assets of this succession.” Id. at 186. Moreover, in Succession of McLendon, 383 So.2d 55 (La.App. 2 Cir.1980), the court found sufficient “other proper cause” to reopen a succession based on the discovery of a mil after the succession had been' concluded. The succession representative in McLendon had been aware of the existence of the will, but had considered it invalid, and therefore had failed to present it to the court. The court 17found that reopening the succession was particularly appropriate under those facts because “the circumstances surrounding the succession indicate[d] fraudulent conduct.” Id. at 58. Thus, Richardson’s Estate and McLendon both indicate that circumstances indicating any type of fraud are sufficient “other proper cause” for reopening a succession. Although Farrell has not specifically alleged fraud against Nelson in the instant case, he has made claims that Nelson misstated facts in the succession document, as well as serious allegations of violation of Louisiana law.
Another circumstance in this case convinces me that the trial court abused its discretion in denying Farrell’s Petition to Reopen his mother’s succession. Nelson makes strong claims that Farrell somehow lost his right to reopen the succession by “accepting the proceeds of the succession.” However, acceptance of succession proceeds does prevent the reopening of a succession, as evidenced by the provisions of La. C.C.P. art. 3393(B), which specifically allow the reopening of a succession “[a]fter formal or informal acceptance by the heirs or legatees.” In the instant case, the chronology of events indicates that Farrell never acquiesced in Nelson’s decisions regarding his mother’s succession. Although the majority states that “Nelson attempted to communicate with his brother many times prior to filing the Judgment of Possession,” the record contains only two communications between Ms. Chate-lain’s death on May 6, 1997, and the filing of the succession documents on August 21, 1997. Nelson wrote Farrell a letter on May 21, 1997, then Nelson’s attorney sent the proposed succession documents to Farrell on August 15, 1997. Farrell did not receive those documents until August 17, 1997. Just four days later, Nelson filed the documents, and the documents were signed by the trial judge. One week after that, Farrell’s attorney, Mr. Kemp, communicated Farrell’s “concerns” about the succession documents to Nelson’s attorney, Mr. Babovich. Mr. Kemp and Mr. Babo-vich then communicated seven times prior to July 31, 1998, when Farrell filed the Petition to Reopen Succession. Those | ^communications indicate that Farrell was making attempts to settle the matter which Nelson. Moreover, Farrell actually received more succession funds on two occasions prior to the filing of the Petition to Reopen. Despite those efforts to compromise the matter, Farrell’s “concerns” were apparently not allayed, as indicated by his decision to file the Petition to Reopen.
Nelson points out that Mr. Babovich’s August 15, 1997 letter to Farrell, which was attached to copies of the succession documents sent for Farrell’s review, informed Farrell of their intention to file the documents “immediate!/’ unless they heard from Farrell. However, Nelson cannot unilaterally set such a time limit on Farrell’s review of the documents, especially since that time limit was vague. Farrell’s failure to contact Mr. Babovich about his concerns prior to the filing of the succession documents just four days after Farrell received them cannot be used to prevent Farrell from reopening the succession.
I believe that the allegations made by Farrell in the instant case are more than *627 sufficient to constitute “other proper cause” for reopening Ms. Chatelain’s succession. Accordingly, I would reverse the trial court judgment and remand for further proceedings.