JiCIACCIO, Judge.
This ease arises out of a petition to re-open the Succession of Stella Lescale Villarrubia filed by plaintiff, Todd Villarrubia. From a summary judgment rendered in favor of defendants, Donald J. Villarrubia, individually, and as the former executor of the Succession of Stella Lescale Villarrubia, dismissing his claim, plaintiff now appeals. We reverse.
Stella Lescale Villarrubia died on January 13, 1992. She was survived by two of her three sons, Donald J. Villarrubia and Milton J. Villarrubia Jr. A third son, Stanley G. Villarrubia, predeceased Stella. Plaintiff is the sole surviving child of Stanley Villarru-bia. By an olographic codicil to her statutory will, Stella left to each of her grandchildren, including plaintiff, particular legacies of $1,000.00 each. Under her will, the residual legatees were her two surviving sons, Donald and Milton Jr.[1]
Upon receiving his particular legacy of $1,000.00 from the succession, plaintiff signed a receipt for legacy, acknowledging his receipt of the $1,000.00, and consented to the rendering of a judgment, placing the residuary legatees into possession of the remainder of Stella Villarrubia’s property. Once the legacies under the testament were fulfilled, Milton, Jr. and Donald Villarrubia were placed in possession of the remainder of Stella Villarrubia’s estate.
laAt the time the judgment of possession was rendered, LSA-C.C. art. 1493, as -amended in 1989 and 1990, was in effect. Article 1493, as amended in 1989 and 1990, extinguished forced heirship for persons who, upon the death of their decedents, were neither mentally incompetent nor physically in-firmed, and had attained the age of 23 years. Because the surviving children of Stella Vil-larrubia were neither physically infirm nor mentally incompetent and were greater than 23 years of age, there were no forced heirs at the time the judgment of possession was rendered.
*86 Subsequent to the signing of the judgment of possession and Todd’s signing of the receipt for legacy, the Louisiana Supreme Court in Succession of Lauga, 624 So.2d 1156 (La.1993) declared unconstitutional amended article 1493 and the amendatory acts of 1989 and 1990 in their entirety.
Based on the Supreme Court’s decision in Lauga, plaintiff instituted this action in representation of his father, Stanley Villarrubia, to re-open the Succession of Stella Villarru-bia and to recover the forced portion which was denied Stanley Villarrubia’s estate.
Both parties filed motions for summary judgment, as all material issues of fact were agreed to and the only issue before the court was whether plaintiffs signing of the receipt for legacy constituted a waiver of his forced heirship rights.
In rendering summary judgment in favor of the succession, the trial judge gave the following reasons:
Todd Villarrubia (hereinafter, “Todd”) is the grandson of the decedent, Stella Les-cale Villarrubia (hereinafter, “Stella”), and his father, Stanley Villarrubia, predeceased Stella. Thus, under Louisiana law, Todd would have represented his father in his grandmother’s estate for intestate succession purposes, but for forced heirship purposes, at the time Stella hdied, Act 147 of 1990 was in effect, and it provided that a grandchild such as Todd did not have a claim as a forced heir. It is undisputed that Stella’s will omitted her grandson as a forced heir, but she did leave him a particular legacy of $1,000. It is also undisputed that under the terms of Stella’s will, Todd did not inherit anything other than the $1,000.00 particular legacy. Todd did not challenge the interpretation of the will or the legal conclusion. The only question raised by Todd in asking the Court to reopen the Succession of Stella Lescale Villarrubia was to contend that, by virtue of the decision of the Louisiana Supreme Court in Succession of Lauga, rendered after Stella’s estate had been closed, his grandmother did not have the legal right to exclude him because he was a forced heir.
At the time this succession was closed, Act 147 of 1990 was presumed to be in force; the Louisiana Supreme Court had not yet ruled in the Succession of Lauga, which declared Act 147 of 1990 unconstitutional. Instead of waiting to see what happened in the Lauga, case, which was then pending before the Louisiana Supreme Court, and having been advised of his right to do so, Todd signed a “Receipt and Release” for the $1,000.00 particular legacy that was made by his grandmother to him, and he expressly consented, in the “Receipt and Release,” to the entry of a Judgment of Possession. The undisputed evidence showed that Todd was represented by counsel, and that he is an attorney himself. Additionally, it was undisputed and apparent from the evidence that Todd participated in discussions with both of his uncles (who inherited the residue of the estate) in connection with the disposition of property of the estate and the closing of the succession. Furthermore, there was undisputed evidence that Todd had asserted rights as a forced heir in his father’s estate and had reopened those succession proceedings to assert his rights against his stepmother.
The Court recognizes that Todd had rights that, if he had asserted them timely, would have entitled him to be recognized as a forced heir in Stella’s succession. Instead of asserting those rights, Todd accepted the particular legacy made to him and consented to the entry of the Judgment of Possession. For whatever reason, Todd elected not to wait until Lauga was decided, or take a chance on its outcome, so that Stella’s estate could be concluded at that time instead of later. Todd could have easily refused to consent to the entry of a Judgment of Possession and asserted hisjjright as a forced heir to reduce excessive donations. Todd could have asserted the unconstitutionality of the forced heir-ship legislation just as the omitted children in the Lauga case did. Instead, by knowingly participating in and acquiescing in the rendering of the Judgment of Possession that has been rendered, Todd waived his rights and relinquished any right that *87 he may have had to assert a forced portion in Stella’s estate.
The “Receipt and Release” states specifically that Todd discharged the executor and the residuary legatees from all further responsibility to him and he consented to the rendition of a Judgment of Possession in favor of the persons entitled to be placed in possession. The assets of the estate, some of which were real estate, have now been distributed to the legatees and are in the stream of commerce. Third parties are entitled to rely on that Judgment of Possession. In addition to Todd’s behavior, the “Receipt and Release” he signed constituted a judicial admission and a knowing waiver of Todd’s rights on which others have relied, and it is the Court’s opinion that Todd is now estopped from pursuing the claim he might have originally pursued. Todd is not entitled to have the succession reopened, and the succession is entitled to summary judgment against him.
On appeal plaintiff argues that' the trial judge erred in finding that plaintiffs signing of the receipt for legacy constituted, a waiver of his rights as a forced heir to assert a claim for his share of the forced portion of Stella Lescale Villarrubia’s estate. Plaintiff contends that the trial judge’s reference to the “Receipt and Release” in his reasons for judgment was not a release of any kind but rather a receipt evidencing his receipt of the particular legacy of $1,000.00 left to him by his grandmother. We agree.
The document executed by Todd Villarru-bia entitled “Receipt for Legacy” specifically provided in part:
BEFORE ME, and in the presence of the undersigned witnesses, appeared Todd M. Villarrubia, who declared that he is the person named in the Codicil to thé Last Will and Testament of STELLA LES-CALE VILLARRUBIA, which has been dulyjjprobated ⅛ these proceedings, as the legatee of the sum of ONE THOUSAND AND NO/100 DOLLARS (1,000.00).
He acknowledges delivery to him and his receipt of the property listed above, and he acknowledges that this is all of the property to which he is entitled under said Last Will and Testament and the Codicil thereto. He therefore discharges the testamentary executor and the residuary legatees from all further responsibility to him under said Last Will and Testament and the Codicil thereto. He further consents to rendition of a Judgment of Possession in favor of the persons entitled to be placed into possession.
The document was signed by plaintiff, a notary, and two witnesses.
As a particular legatee, plaintiff was required to execute a receipt for legacy to evidence his receiving the $1,000.00 due him under the terms of the codicil to Stella Villar-rubia’s last will and testament. LSA-C.C.P. arts. 3391 and 3394. The receipt served as written confirmation that the terms of Stella Villarrubia’s will were carried out, insofar as plaintiffs status as a particular legatee was concerned. It confirmed that plaintiff actually received the $1,000.00. It also confirmed that the $1,000.00 was all the property that plaintiff was entitled to under his grandmother’s will. The receipt also served to discharge the executor of the will from any further responsibilities to plaintiff under the will. Lastly, it served as written consent to the rendering of a judgment of possession in favor of those persons entitled to be placed in possession.
The receipt contains no language regarding the rights of Todd Villarrubia as a forced heir. Likewise, the document contains no language that can be reasonably construed as a waiver of any rights plaintiff had or may have had as a forced heir. Absent such language, we find the document is a receipt for legacy and nothing more. Hence, we find the trial judge was clearly wrong in holding that by signing the receipt of legacy plaintiff had waived and | (¡relinquished any right that he may have had to assert a claim for his share of the forced portion of Stella Villarru-bia’s estate.
The defendants argue on appeal, and the trial judge found, that plaintiff is estopped from re-opening the Succession of Stella Vil-larrubia because he acquiesced in the rendering of the judgment of possession. They contend that his acquiescence constituted a *88 judicial admission that cannot be revoked, on the basis of an error of law, i.e., plaintiffs mistaken belief that Act. No. 788 of 1989 and Act. No. 147 of 1990 were constitutional and excluded him as a forced heir. In support of their argument, defendants rely on the cases of Succession of Williams, 418 So.2d 1317 (La.1982) and Averette v. Jordan, 457 So.2d 691 (La.App.2d Cir.1984).
In Williams, the decedent died intestate leaving two surviving children, Milton Williams and Rachel Williams Kleinpeter. Milton renounced his interest in his mother’s succession, erroneously believing that doing so would allow his two children to represent him in his mother’s succession. Pursuant to a joint petition stating that Milton had renounced the succession of his mother and that his children were representing him, a judgment of possession was rendered recognizing Milton’s children and Kleinpeter as the decedent’s sole heirs. The judgment placed each of Milton’s children into possession of one-fourth of the estate and Kleinpeter into possession of one-half of the estate.
After learning that LSA-C.C. art. 886 provided that only deceased persons may be represented, Kleinpeter filed a rule to show cause why the judgment of possession should not be corrected to reflect that she was the sole heir of her mother’s succession by virtue of Milton’s renunciation. The trial court and court of appeal rejected this argument. On appeal, the Supreme Court found that the judgment of possession was based on an erroneous legal ^conclusion that Kleinpeter could refuse her brother’s portion and that Milton’s children could represent him in the succession. The Court held, nonetheless, that Kleinpeter was precluded from asserting that she was the sole heir of her mother’s succession because she joined in the pleadings on which the judgment of possession was based. 418 So.2d at 1319.
In Averette v. Jordan, supra, the Second Circuit applied the rationale of Williams in a case involving forced heirship rights. There the decedent, Amos Jordan, was survived by five children. Prior to his death, Amos and his wife transferred the naked ownership of a tract of land to one of their sons, Wynes Jordan. The donation was onerous; the cause was Wynes’ promise to care for his parents in their old age. The detailed descriptive list of Amos’ succession excluded the tract of land that had been donated to Wynes. The judgment of possession placed the four other children into possession of Amos’ estate. Although Wynes was omitted from Amos’ last will and testament, he joined in the petition for probate and acquiesced in writing to a division of the property in accordance with his father’s will.
After Wynes died, his children attempted to assert Wynes’ forced heirship claim to a portion of the property that had comprised the succession of Amos. Relying on Williams, the court rejected the claim of Wynes’ heirs holding that because Wynes joined in the succession proceedings of his father, Amos, and acquiesced in the manner in which the property was divided among the named legatees, his heirs were precluded from asserting any interest in the succession on Wynes’ behalf.
The present case is clearly distinguishable from Williams, supra, and Averette, supra. Unlike plaintiff in this case, in Williams, Rachel Kleinpeter could have asserted a claim to be placed in possession of her mother’s entire Restate because her brother had expressly renounced his right in the succession. By operation of law, her brother’s portion devolved to her as his only co-heir in the same degree. LSA-C.C. art. 1022. Similarly, in Averette, Wynes Jordan could have asserted a claim as a forced heir in the succession of his father rather than join in the petition for probate and assent to the division of the property. Here, however, at the time Todd Villarrubia signed the “Receipt For Legacy”, the law in effect precluded him from asserting a right as a forced heir. Also, unlike Kleinpeter in Williams, supra, and Wynes Jordan in Averette, supra, plaintiff did not join in the petition for possession.
The record shows that the attorney for the executor emphatically denied that Todd Vil-larrubia had any rights as a forced heir. He stated in a letter dated April 8, 1992 to Todd’s attorney that:
“So that there will be no question about my position as attorney for the estate, in *89 my opinion Todd Villarrubia has.no rights in the estate of Stella Villarrubia. He is not a forced heir under existing law, and there is no way that I will advise Don Villarrubia that there is any merit to such a position unless you are prepared to challenge that law and pursue the matter to the Louisiana Supreme Court, you will not get a voluntary agreement to recognize him as a forced heir..(sie) Todd is not a child of the decedent, so that if even other aspects of the forced heirship law were to be held unconstitutional, Todd comes under a unique rule of the new law.which has to do with representation of children by their children, i.e., the grandchildren. You would either have to knock out the entire law, or you would have to leap frog from a position with reference to children as forced heirs to also invalidate the rule regarding grandchildren. There is no question in my mind that the provision regarding grandchildren’s rights as forced heirs is constitutional, and I have so advised Donald Villarrubia....”
All of the parties and their attorneys were fully aware of the controversy surrounding LSA-C.C. art. 1493, as amended in 1989 and 1990, represented by lathe Lauga litigation. Because of the uncertainty of the status of the law the trial judge incorrectly placed the burden on Todd to contest the petition for possession in order to preserve his forced heirship rights. We find the reverse to be true. By closing the succession before Lau-ga was decided the universal legatees assumed the risk of attack on the judgment of possession. In order to foreclose any forced heirship claim of Todd they had the burden of obtaining a waiver or disclaimer of Todd’s forced heirship rights, but they failed to do so.
For the foregoing reasons, we find the trial judge was clearly wrong in holding that plaintiff was estopped from asserting his rights as a forced heir to claim his share of the forced portion of Stella Lescale Villarru-bia’s estate.
LSA-C.C. art. 1017 provides thát “[t]he renunciation of a succession is not presumed, it must be made expressly by public act before a notary, in presence of two witnesses.” Because plaintiff never expressly renounced his right in his grandmother’s succession by public act nor did he waive his right as a forced heir in signing the receipt for legacy, we find the trial judge was clearly wrong in finding plaintiff was not entitled to have his grandmother’s succession re-opened to assert his right as a forced heir to his share of the forced portion of the estate.
To the extent that plaintiff, as a forced heir, may have an interest in properties from Stella Villarrubia’s succession that were sold and/or transferred to third parties who had relied on the public records and the judgment of possession, we hold that the purchasers of record hold those properties free of any claim of ownership by Todd Villarrubia. We further find that plaintiff does have the right to assert a personal claim against his co-heirs for the value of his interest in the proceeds of such sales or transfers.
Accordingly, for the above reasons, the judgment of the trial court | ^granting summary judgment in favor of the defendants, Donald J. Villarrubia, individually, and as the former executor of the Succession of Stella Lescale Villarrubia, is reversed. The case is remanded to the trial court to re-open the Succession of Stella Lescale Villarrubia and to allow plaintiff, Todd Villarrubia, to assert his claims as a forced heir of the estate of Stella Lescale Villarrubia.

REVERSED AND REMANDED.

BYRNES, J., concurs with additional reasons.

. In her statutory will, Stella Villarrubia left the residue of her estate to her three sons “conjointly.” It is undisputed that since Stanley predeceased her, Stanley’s share accreted in favor of the two surviving sons under the terms of the will. See LSA-C.C. art. 1707 which provides ‘‘[a]ccretion shall take place for the benefit of the legatees, in case of the legacy being made to several conjointly."