680 So.2d 1147 (1996)
In re SUCCESSION OF Stella Lescale VILLARRUBIA,
No. 95-C-2610.
Supreme Court of Louisiana.
September 5, 1996.
Rehearing Denied October 11, 1996.
Max Nathan, Jr., Raymond P. Ward, Sessions & Fishman, New Orleans, for Applicant.
Thomas J. Corrington, Metairie, for Respondent.
VICTORY, Justice.[*]
We granted certiorari to consider whether a party who consented in an authentic act to *1148 a judgment of possession, based on the forced heirship law as it existed at the time, can thereafter seek to reopen the succession to assert his forced heirship rights, following this Court's decision in Succession of Lauga, 624 So.2d 1156 (La.1993). We hold that petitioner has not alleged proper cause for reopening the succession and we dismiss his petition.

FACTS AND PROCEDURAL HISTORY
The facts are not in dispute. The decedent, Stella Lescale Villarrubia, died on January 13, 1992. She was survived by two of her three sons, Donald J. Villarrubia and Milton J. Villarrubia, Jr. Her third son, Stanley G. Villarrubia, predeceased Stella. Petitioner, Todd Villarrubia, is the sole surviving son of Stanley G. Villarrubia.
By an olographic codicil to her statutory will, Stella left particular legacies of $1,000.00 to each of her surviving grandchildren, including Todd. In her will, Stella left the residue of her estate to her two surviving sons, Donald and Milton Jr.[1]
The petition to probate Stella's testament was filed on February 12, 1992. Todd and the succession were each represented by counsel fully knowledgeable in the area of succession law.[2] In attempting to close the succession, the parties corresponded regarding the rights of the parties under existing law.
This correspondence between Todd's attorney, Mr. C. Lawrence Orlansky, and the succession's attorney, Mr. Max Nathan, raised the subject of the constitutionality of LSA-C.C. art. 1493, as amended by Act No. 788 of 1989 and by Act No. 147 of 1990. Article 1493, as amended in 1989 and 1990, extinguished forced heirship for persons who, upon the death of their decedents, were neither mentally incompetent nor physically infirmed, and had attained the age of 23 years. Two cases, Succession of Lauga, supra, and Succession of Terry, 624 So.2d 1201 (La. 1993), were then pending in state court regarding this issue.
On April 2, 1992, Mr. Orlansky wrote to Mr. Nathan as follows:
It is our position that Todd Villarrubia, through representation of his father, has an interest in the estate of Stella Villarrubia. This is simply to advise you of that interest and to suggest that assets of the estate should not be divided or distributed without the participation and/or approval of my client. (Emphasis added.)
On April 8, 1992, Mr. Nathan responded to Mr. Orlansky as follows:
So that there will be no question about my position as attorney for the estate, in my opinion Todd Villarrubia has no rights in the estate of Stella Villarrubia. He is not a forced heir under existing law, and there is no way that I will advise Don Villarrubia that there is any merit to such a position unless you are prepared to challenge that law and pursue the matter to the Louisiana Supreme Court, you will not get a voluntary agreement to recognize him as a forced heir.
Mr. Nathan concludes the letter by stating "[b]y the same token, if you think that Todd has valuable rights and that he will be better served by litigation, then I would encourage you to go ahead and file pleadings in the succession of Stella Villarrubia asserting your claim on his behalf." Thus, as the court of appeal concluded, "[a]ll of the parties and their attorneys were fully aware of the controversy surrounding LSA-C.C. art. 1493, as amended in 1989 and 1990, represented by the Lauga litigation." Succession of Villarrubia, 95-0346 pp. 8-9 (La.App. 4th Cir. 9/28/95), 662 So.2d 85, 89.
*1149 Todd continued to participate in discussions with both of his uncles (who inherited the residue of the estate) in connection with the disposition of property of the estate and the closing of the succession. Todd had also asserted rights as a forced heir in litigation concerning his father's estate.
On March 9, 1993, Todd executed a "Receipt for Legacy." The Receipt for Legacy is in the form of an authentic act and provides as follows:
BEFORE ME, and in the presence of the undersigned witnesses, appeared
TODD M. VILLARRUBIA
who declared that he is the person named in the Codicil to the Last Will and Testament of STELLA LESCALE VILLARRUBIA, which has been duly probated in these proceedings, as the legatee of the sum of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00).
He acknowledges delivery to him and his receipt of the property listed above, and he acknowledges that this is all of the property to which he is entitled under said Last Will and Testament and the Codicil thereto. He therefore discharges the testamentary executor and the residuary legatees from all further responsibility to him under said Last Will and Testament and the Codicil thereto. He further consents to rendition of a Judgment of Possession in favor of the persons entitled to be placed into possession. (Emphasis added.)
The Judgment of Possession was signed on September 2, 1993. Attached to the Judgment of Possession were the receipts for the particular legacies from all the grandchildren, including Todd's Receipt for Legacy. The Judgment of Possession sent Milton J. and Donald J. Villarrubia into possession of the balance of Stella Villarrubia's estate in accordance with Stella's statutory will.
On September 10, 1993, this Court rendered its opinion in Succession of Lauga, supra. In Lauga, we held that LSA-C.C. art. 1493, as amended in 1989 and 1990, and the amendatory acts of 1989 and 1990 in their entirety, violated Article XII Sec. 5 of the Louisiana Constitution of 1974, declaring that "[n]o law shall abolish forced heirship." In a companion case, we held that the trial court was correct in applying the forced heirship law in effect before the purported amendments to LSA-C.C. art 1493, which were held unconstitutional in Lauga. Succession of Terry, supra.
On May 18, 1995, Todd Villarrubia filed his Petition to Re-Open Succession and for Reduction of Donation Mortis Causa. The parties filed cross-motions for summary judgment. On December 7, 1995, the trial court denied Todd Villarrubia's motion for summary judgment and rendered judgment in favor of Donald Villarrubia, individually and as former executor of the estate of Stella Villarrubia.
In its written reasons for judgment, the court stated:
The Court recognizes that Todd had rights that, if he had asserted them timely, would have entitled him to be recognized as a forced heir in Stella's succession. Instead of asserting those rights, Todd accepted the particular legacy made to him and consented to the entry of the Judgment of Possession. For whatever reason, Todd elected not to wait under [sic] Lauga was decided, or take a chance on its outcome, so that Stella's estate could be concluded at that time instead of later. Todd could have easily refused to consent to the entry of Judgment of Possession and asserted his right as a forced heir to reduce excessive donations. Todd could have asserted the unconstitutionality of the forced heirship legislation just as the omitted children in the Lauga case did. Instead, by knowingly participating in and acquiescing in the rendering of the Judgment of Possession that has been rendered, Todd waived his rights and relinquished any right that he may have had to assert a forced portion in Stella's estate.
Todd appealed, arguing that the trial judge erred in finding that his signing of the Receipt for Legacy constituted a waiver of his rights as a forced heir to assert a claim for his share of the forced portion of Stella's estate. At oral argument on appeal, the succession presented evidence, without objection, that some of the immovable property *1150 forming part of the estate had been sold to third parties and that Todd had signed the act of sale as a witness. Todd's attorney stipulated that he would not pursue an action against the third party purchaser but simply wanted his share of the proceeds of the sale from his uncles.
The court of appeal reversed, finding that the Receipt for Legacy "contains no language that can be reasonable construed as a waiver of any rights plaintiff had or may have had as a forced heir." 662 So.2d at 87. Further, the court of appeal found that at the time the Receipt for Legacy was signed, Todd had no rights as a forced heir, therefore, at that time he could not have asserted any rights as a forced heir. Id. at 88. In addition, the court of appeal found that "[b]y closing the succession before Lauga was decided the universal legatees assumed the risk of attack on the judgment of possession." Id. at 89. Lastly, regarding the property in the hands of third parties, the court of appeal held that "the purchasers of record hold those properties free of any claim of ownership by Todd Villarrubia" but that Todd had the right to assert a personal claim against his uncles. Id.
We granted a writ to consider the decision of the court of appeal. Succession of Villarrubia, 95-2610 (La.1/12/96), 666 So.2d 312.

DISCUSSION
At the outset, it must be noted that whether or not a succession will be reopened is within the sound discretion of the trial court. Danos v. Waterford Oil Co., 225 So.2d 708, writ denied, 254 La. 856, 227 So.2d 595 (1969).
Article 3393B of the Louisiana Code of Civil Procedure provides in pertinent part:
After tacit or express acceptance by the heirs or rendition of a judgment of possession by a court of competent jurisdiction, if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any succession proceedings had been filed in court.
The basic purpose of LSA-C.C.P. art. 3393 is to provide a means for dealing with overlooked succession assets. Succession of Yancovich, 289 So.2d 855 (La.App. 4th Cir. 1974); Katherine Shaw Spaht, Developments in the Law 1985-1986 Part I: A Faculty Symposium, 47 La.L.Rev. 471, 484 n. 47. As no other estate property has been discovered, the question before us is whether "other proper cause" exists to allow reopening of the succession.
Courts have found "other proper cause" under LSA-C.C.P. art. 3393 to exist under extremely limited circumstances, such as where a valid will is discovered after the administration of an intestate succession. Succession of McLendon, 383 So.2d 55 (La. App. 2nd Cir.1980). In Estate of Sylvester, where the trial court amended a judgment of possession because it evidenced an unequal distribution of estate assets that was not in accordance with the intent of the parties, the court of appeal applied the jurisprudence interpreting LSA-C.C.P. art. 3393 and noted that judgments of possession are rarely amended for grounds other than the discovery of additional property or new wills. Estate of Sylvester, 93-731, p. 5 (La.App. 3d Cir. 2/2/94), 631 So.2d 614, 619.[3] As stated in Sylvester, successions are not reopened to allow for collation, see Succession of Trouard, 281 So.2d 863 (La.App. 3d Cir. 1973); for the assertion of forced heirship rights, see Succession of Lasseigne, 488 So.2d 1303 (La.App. 3d Cir.), writ denied, 494 So.2d 327 (La.1986) and Averette v. Jordan, 457 So.2d 691 (La.App. 2nd Cir.1984); or for error of law, see Succession of Williams, 418 So.2d 1317 (La.1982) and Succession of McCarthy, 583 So.2d 140 (La. App. 1st Cir.1991).
*1151 In Succession of Lasseigne, the heirs disputed the division of property after all heirs had accepted the succession unconditionally and consented to the judgment of possession, with one heir seeking to reopen the succession to assert his forced heirship rights. Succession of Lasseigne, supra. The court found no proper cause to reopen the succession because "[n]o creditor was appearing to demand payment of a debt, no overlooked assets sought to be recovered for distribution among the heirs had been found and all of the heirs had purely, simply and unconditionally accepted this succession." Id. at 1306.
Likewise, in Averette v. Jordan, the descendants of a forced heir were precluded from asserting the forced heir's rights because the forced heir joined in the succession proceeding of the decedent and acquiesced that the property in question would be divided among his four siblings, excluding him. Averette v. Jordan, supra at 696.
In this case, Todd Villarrubia seeks to reopen the succession because, unlike in Lasseigne and Averette, the law excluding him as a forced heir has been declared unconstitutional.
From the record, it is clear that when Todd signed the Receipt for Legacy, he did so with knowledge of the pending Lauga case, and he intended to accept the $1,000 bequest under the will and have his two uncles put into possession of the residue of the estate, after the other particular legacies were satisfied.[4] The Receipt for Legacy constitutes an authentic act by which Todd consented to the entry of a judgment of possession in accordance with the decedent's will. This statement was made in conjunction with a judicial proceeding and amounts to a judicial confession under LSA-C.C. art. 1853. See Succession of Williams, 418 So.2d 1317 (La.1982). Here, upon the signing of the Receipt of Legacy in light of Todd's knowledge of the disputed constitutionality of LSA-C.C. art. 1493, as amended in 1989 and 1990, the succession was led to believe that Todd's claim to forced heirship rights, as asserted in his attorney's letter to Mr. Nathan of April 2, 1992, was no longer at issue. In that letter, Mr. Orlansky asserted that Todd had an interest in the estate and that, therefore, the property should not be divided without his participation and/or approval. Thereafter, in discussions which culminated in Todd signing the Receipt for Legacy, Todd participated in the distribution of the property and approved of its distribution in accordance with the Judgment of Possession.
In order to have the succession reopened and Todd put into possession of property that would have been due him as a forced heir, Todd would have to revoke his judicial confession. However, no error of fact exists that would permit revocation under LSA-C.C. art. 1853. The only error in this case was that all parties thought that LSA-C.C. 1493, as amended in 1989 and 1990, was constitutional. Therefore, Todd and the other heirs believed that there were no forced heirs. All parties agreed to take the property bequeathed them in the will. Thus, Todd agreed to sign the Receipt for Legacy and the subsequent Judgment of Possession was rendered based on an erroneous belief that the law was constitutional.
Succession of Williams, supra, established that a judicial confession giving consent to the entry of judgment cannot be revoked based on an error of law. See also Averette v. Jordan, supra. In Williams, the plaintiff, daughter of the decedent, consented to a judgment of possession putting herself and her niece and nephew into possession of her mother's estate based on an error of law she and her brother shared the mistaken belief that upon her brother's renunciation of the mother's succession, his children could represent him, even though the brother was living. This belief was contrary to LSA-C.C. art. 866 that "only deceased persons *1152 may be represented." This Court refused to amend the judgment of possession to reflect that she was the sole heir, holding that "since [plaintiff] judicially declared that she was only entitled to one-half of the succession property and judgment was rendered in accordance therewith, she cannot now revoke her declarations and complain that the judgment of possession is erroneous as a matter of law." 418 So.2d at 1320-1321.
In accordance with Williams, the First Circuit found error of law to be insufficient cause to reopen a succession in Succession of McCarthy, supra There, the children of the decedent sought to reopen the succession to terminate the life usufruct of the decedent's wife, granted by the judgment of possession in accordance with the petition for possession, upon the remarriage of the decedent's wife. 583 So.2d 140. The petition for possession and judgment of possession were contrary to the will which did not specify that the usufruct was for life. By law, a usufruct of a surviving spouse terminated at remarriage, unless the will provided otherwise. The court of appeal found no error by the trial court in maintaining the wife's objection of no cause of action because the children had unconditionally accepted the succession, they did not seek to have the judgment annulled or amended, nor did they appeal, and no new will or estate property was discovered. Id. at 142.
Todd distinguishes Williams because, in Williams, the plaintiff joined in the petition for possession, whereas here, Todd did not. However, Todd did not need to join in the Petition for Possession as a particular legatee, but only needed to sign (or refuse to sign) the receipt. As in Williams, by judicially accepting the $1,000.00 and consenting to his two uncles being put into possession of the residue of the estate, a Judgment of Possession was entered. Under Williams, he cannot now revoke the judicial confession and attack the judgment based on an error of law.
Todd strenuously argues that he had no rights as a forced heir at the time the Receipt for Legacy was signed and under that Breaux v. Laird, 230 La. 221, 88 So.2d 33 (1956), in order to waive a right it must be in existence and known to the person waiving the right. While it may be true that at the time Todd signed the Receipt for Legacy, he believed he had no right to a forced portion of the estate, he had other rights which he failed to exercise.
Todd knew of the possible unconstitutionality of LSA-C.C. art. 1493. In fact, this was a point of detailed correspondence between the attorneys. He could have: (1) waited for Lauga to be decidedno one forced him to sign the Receipt for Legacy when he did; (2) directly challenged the constitutionality of LSA-C.C. art. 1493, as did the heirs in Lauga; (3) refused to sign the Receipt for Legacy and forced a contradictory hearing under LSA-C.C.P. art. 3394,[5] and he could have appealed had he not prevailed. By failing to exercise these rights, Todd cannot now have the succession reopened to assert his rights as a forced heir.
We realize this ruling is harsh, but if the law allowed judgments of possession to be overturned because of error of law or change in the law, the sanctity of such judgments would be seriously impaired. The court of appeal's attempt to resolve this problem by ruling that "purchasers of record hold those properties free of any claim of ownership by Todd Villarrubia" is not only contrary to law (LSA-R.S. 9:5630; Vaughan v. Housing Authority of New Orleans, 80 So.2d 561 (La. App.Orl.Cir.1955); Succession of Rosinski *1153 158 So.2d 467 (La.App. 3d Cir.1963)), but also illustrates the reason for the sanctity of such judgments. Notwithstanding Todd's stipulation to forego his rights against third party purchasers, heirs in future cases might not be so willing.

CONCLUSION
The trial court did not abuse its discretion in refusing to reopen the succession. There is no proper cause to reopen the succession under LSA-C.C.P. art. 3393 because Todd signed the Receipt for Legacy consenting to a Judgment of Possession in favor of his uncles and may not revoke it for an error of law.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the trial court reinstated.
REVERSED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, Dissenting.
The issue, as the court of appeal correctly framed it, is whether the executrix of the succession carried her burden of proving that plaintiff waived or renounced his forced heirship rights. I agree with the appellate court's conclusion that the executrix failed to carry her burden.
The majority incorrectly characterized plaintiffs actions as a judicial confession under La.Civ.Code art. 1853. A judicial confession is a rule of evidence that deems the party's declaration to be proof of the facts or obligations therein confessed, but not of any other facts. Plaintiff's declaration, if a judicial confession, certainly did not confess a renunciation of his potential forced heirship rights. Plaintiff merely signed a receipt for the $1,000 legacy, to which he was clearly entitled under the will, and acknowledged that he was not entitled to any other property under the will. While plaintiff also consented to the rendition of the judgment of possession based on the will, he did not waive or renounce any rights as a potential forced heir, nor did he receive any consideration for waiving or renouncing those rights.
The renunciation of succession rights by an heir must be expressed and will not be presumed.[1] La.Civ.Code art. 1017. The affidavit in this case cannot be construed as a renunciation of plaintiffs forced heirship rights when those rights were not even mentioned in the document. If the executrix intended for the affidavit to serve as a renunciation of forced heirship rights, the affidavit should have expressly stated that fact.
The case of Brown v. Drillers, Inc., 93-1019 (La.1/14/94); 630 So.2d 741, involved a similar issuewhether a general release instrument executed by a wife barred her claim for the wrongful death of her husband that arose after execution of the release. This court's decision in Daigle v. Clemco Industries, 613 So.2d 619 (La.1993), rendered after execution of the release in the Brown case, repudiated prior jurisprudence precluding pre-death releases of wrongful death claims as contra bonos mores. In ruling in favor of the wife, this court in Brown extensively reviewed the jurisprudence regarding release instruments. Particularly relevant here is our discussion regarding the special treatment accorded releases of future actions. We noted that the court must consider both the state of the law and the facts surrounding the execution of the release in order to decide the intention of the contracting parties as to any release of an unaccrued cause of action. Applying that principle, we held in Brown (1) that the law at the time the release was executed precluded such a pre-death release of wrongful death claims and that this state of the law, while not dispositive, "sheds light on what the parties intended by the language employed in the instrument," and (2) that the parties did not contemplate the husband's death when the release was signed, having failed to even mention death in the release. Id. at 755.
*1154 Applying that same analysis to the present case buttresses my agreement with the court of appeal that the release did not constitute a waiver or renunciation of plaintiff's forced heirship rights. Plaintiff was not a forced heir under the law in effect at the time the release was signed. As in Brown, this state of the law "sheds light" on the intention of the parties that the release did not encompass a waiver or renunciation of plaintiffs potential forced heirship claim. Based on this "state of the law" factor and on the fact that the parties did not even mention forced heirship in the release instrument, I conclude that the parties did not reach an agreement for plaintiffs renunciation of his potential forced heirship rights in contemplation of the eventuality that the special forced heirship provision at issue might be struck down. In my view, the executrix failed to carry her burden that plaintiff renounced his potential forced heirship rights, especially since renunciation must be expressed and cannot be presumed.
Perhaps plaintiff cannot reopen the succession to assert his rights as a forced heir, but plaintiff certainly can file an action against the residuary legatees for reduction of their donations. La.Civ.Code arts. 1502, 1518.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, Sec. 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] In her statutory will, Stella left the residue of her estate to her three sons "conjointly." It is undisputed that because one of her sons, Stanley, predeceased her, Stanley's share accreted in favor of the two surviving sons under the terms of the will. See LSA-C.C. art. 1707 ("Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several conjointly").
[2] In addition, at that time Todd was a senior at L.S.U. Law Center. He was admitted to practice law in Louisiana on October 16, 1992.
[3] The court of appeal in Sylvester upheld the trial court's ruling because "if a trial judge finds good cause for reopening a succession, or, by extension, for amending a judgment, and the correct procedure was used, then the appellate court must give due deference to the decision of the trial judge and should only reverse if manifest error is found." 631 So.2d at 619.
[4] That the phrase "persons entitled to be placed into possession" in the Receipt for Legacy referred to Donald and Milton is clear from Todd's original brief in the court of appeal in which he states:

Upon receipt of this sum from the Succession, Todd Villarrubia signed a Receipt for Legacy acknowledging his receipt of the $ 1,000.00 and consenting to the rendering of a judgment of possession placing the residuary legatees into possession of the remainder of Stella Villarrubia's property.
Original Brief of Todd Villarrubia in the court of appeal, p. 7.
[5] LSA-C.C.P. art. 3391 provides in pertinent part:

Upon the filing of receipts or other evidence satisfactory to the court, showing that the creditors have been paid and that the balance of the property in the possession of the succession representative has been distributed to the heirs and legatees, the court shall render a judgment discharging the succession representative and cancelling his bond.
LSA-C.C.P. art. 3394 provides:
When an heir or creditor is unwilling or unable to accept and receipt for the amount due him, on contradictory motion against the heir or creditor the court may order that the succession representative deposit in a state or national bank or in the registry of the court to the credit of the person entitled thereto the amount due him.
A receipt showing the deposit shall be sufficient in the discharge of the succession representative to the same extent as though distribution to the person entitled thereto had been made.
[1] "Renunciation is a formal act, which... can never be tacit" and "is never presumed." See 3 Marcel Planiol Treatise on the Civil Law § 2056 (La.State Law Inst. trans., 11th ed. 1959).