# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### 2023 CA 1321

IN THE MATTER OF THE SUCCESSION OF
MARILYN ANN BARBIER

Judgment Rendered: **SEP 0 3 2024**

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 104695

Honorable Tiffany Foxworth-Roberts, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| John F. McDermott | Counsel for Appellee |
| Tom S. Easterly | Randall James Roberts |
| Michael S. Walsh | |
| Peyton T. Gascon | |
| Baton Rouge, Louisiana | |
| | |
| Jude C. Bursavich | Counsel for Appellant |
| Lance J. Kinchen | Cecile Ourso Caballero |
| Timothy W. Hardy | |
| Baton Rouge, Louisiana | |

\* \* \* \* \* \*

**BEFORE: McCLENDON, HESTER, AND MILLER, JJ.**

**McCLENDON, J.**

In this appeal, a legatee challenges the trial court's judgment that denied her request to reopen a succession and dismissed her claims with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The decedent, Marilyn Ann Barbier, died testate on May 5, 2018. At the time of her death, Ms. Barbier was single, having been married but once and legally divorced. No children were born of the marriage, and Ms. Barbier never adopted any children.

Ms. Barbier's Last Will and Testament (Testament), dated July 1, 2003, contained three bequests. The first bequeathed her interest in a Grand Isle camp to Floyd J. Roberts, Sr., or to his children by roots, if he did not survive her.[1] In her second bequest, Ms. Barbier divided the credit shelter portion[2] of her estate into eleven equal shares, giving a one-eleventh share to Marie Tassin McDonald, Babette Breaux, Rebecca Ann Roberts, Randall James Roberts, Lori Ourso Babin, Cecile Ourso Caballero, Floyd Roberts, Jr., Regina Roberts Rieger, Claire Tassin Combs, and Carol Mury Higginbotham. The remaining one-eleventh share was divided equally between John Ourso and Chad Ourso, the sons of Sidney Ourso. Ms. Barbier left the rest and remainder of her estate to BR & R Foundation (Foundation), a tax-exempt charitable organization. In the Testament, Ms. Barbier also named Randall James Roberts (Mr. Roberts) to serve as independent executor.

On May 24, 2018, Mr. Roberts filed a Petition to File and Execute Notarial Testament and to Appoint Independent Executor for the administration of Ms. Barbier's succession. On May 29, 2018, he was confirmed as independent executor.

---

[1] Floyd J. Roberts, Sr., who was Ms. Barbier's brother, died on December 25, 2013, leaving four children, Floyd J. Roberts, Jr., Randall J. Roberts, Regina R. Roberts, and Rebecca A. Roberts, all of whom survived Ms. Barbier.

[2] The Testament defined the credit shelter portion, in pertinent part, as follows:

> "Credit Shelter Portion" means the largest amount of my property that can pass free of federal estate tax after considering all other taxable transfers made by me during my lifetime and by reason of my death, and by (i) utilizing all federal estate tax credits allowable to my estate, other than the state death tax credit, and (ii) by maximizing the use of the state death tax credits allowable to my estate after utilizing all other federal estate tax credits allowable to my estate without otherwise increasing the total death taxes due on such property.

2

On December 5, 2019, Mr. Roberts filed a Petition for Possession, together with a detailed descriptive list of all property belonging to Ms. Barbier at the time of her death. At the time of her death, Ms. Barbier owned a forty-percent interest in the Grand Isle Camp, and she owned a 91.8251301 percent interest in BR & R Investment Company, LLC (BR & R), which constituted the vast majority of her estate.

In connection with preparing the Petition for Possession, Mr. Roberts, as independent executor, engaged the services of Postlethwaite & Netterville (P&N), an accounting firm, to independently value Ms. Barbier's interest in BR & R. Mr. Roberts also engaged the services of the accounting firm of Hannis T. Bourgeois (Bourgeois) to serve as estate accountants, as well as an estate attorney. Additionally, Mr. Roberts engaged the services of the accounting firm of Malcolm M. Dienes (Dienes) to value BR & R's interest that the Foundation, as residual legatee, would receive. The accountants at Bourgeois disagreed with the valuation of BR & R's interest as provided by Dienes, and Mr. Roberts relied on the advice given to him by the Bourgeois accountants and the estate attorney. The P&N report was used by Bourgeois and the estate attorney to prepare the Petition for Possession.

Ms. Barbier's interest in BR & R was valued at $13,211,000.00. After deductions for funeral expenses and debts for federal and state income tax, the total net value of Ms. Barbier's estate at the time of her death was calculated to be $13,680,019.51, and the credit shelter portion of the estate was determined to be $11,046,000.00. After splitting the credit shelter portion into the eleven shares, each legatee was entitled to a value of $1,004,181.82.[3] The remainder of the net value was bequeathed to the Foundation.

In the Petition for Possession, Mr. Roberts asserted that Rebecca Ann Roberts, Lori Ourso Babin, Floyd Roberts, Jr., and John Ourso and Chad Ourso desired to receive their portion of Ms. Barbier's estate as a cash payment. He further averred that the remaining legatees desired to receive an interest in BR & R in satisfaction of their respective interests in Ms. Barbier's estate. As a result, and based on the P&N valuation report, it was

---

[3] John Ourso and Chad Ourso's two one-twenty-second shares, which together made up one one-eleventh share, each had a value of $502,090.91.

calculated that each of the legatees desiring an interest in BR & R would receive a 9.9364044 percent interest.

On December 12, 2019, the trial court signed a Final Judgment of Possession in conformity with the Petition for Possession, recognizing the particular legatees and placing each of them in possession of an undivided one-eleventh share, including the one-eleventh share split between John Ourso and Chad Ourso.[4]  On February 7, 2020, the trial court signed a Motion for Amended and Corrected Final Judgment of Possession to correct a clerical error in the Final Judgment of Possession.  The Final Judgment of Possession had mistakenly omitted Cecile Ourso Caballero from that portion of the judgment that listed that she was to receive a 9.9364044 percent interest in BR & R.

On January 31, 2023, approximately three years later, Cecile Ourso Caballero,[5] Marie Tassin McDonald, Claire Tassin Combs, and Carol Mury Higginbotham (the plaintiffs) filed a Petition to Reopen Succession.  Therein, they asserted that the 9.9364044 percent interest they received in BR & R was not equal in value to the cash payment of $1,004,181.82 that the four legatees received.  Therefore, they argued that the Judgment of Possession was not in compliance with Ms. Barbier's Testament. Particularly, the plaintiffs contend that the P&N valuation report applied only a two percent discount for lack of liquidity, which was not appropriate for measuring each minority interest bequest in BR & R.  Rather, they argued, the Dienes report, which applied a twenty to twenty-five percent discount for lack of control and lack of marketability, to be more appropriate in valuing the plaintiffs' minority membership interest.

The plaintiffs also asserted a claim that Mr. Roberts breached his fiduciary duty to the legatees of Ms. Barbier's succession (the Succession), as he had clear conflicts of interest in serving as the independent executor.  They averred that Mr. Roberts had served as manager of BR & R since its inception in 1996, as well as manager of the

---

[4]  On December 13, 2019, the trial court signed a Partial Judgment of Possession, recognizing Floyd J. Roberts, Jr., Randall J. Roberts, Regina R. Roberts, and Rebecca A. Roberts as particular legatees and the owners of one fourth of Ms. Barbier's forty-percent interest, being a ten-percent undivided interest each, in the Grand Isle camp.  The Grand Isle camp is not at issue in this appeal.

[5]  We note that the petition to reopen Ms. Barbier's succession misspelled Mrs. Caballero's first name.  We will continue to refer to Mrs. Caballero as "Cecile Ourso Caballero."

4

Foundation. Therefore, according to the plaintiffs, the lower the discounts used by Mr. Roberts to value the membership interests in BR & R, the greater the value that would go to the Foundation, which he controlled as manager.

Additionally, the plaintiffs alleged that because Mr. Roberts was agent for Ms. Barbier pursuant to a power of attorney, he wore three "hats," namely, that he controlled BR & R, was the independent executor of the Succession, and was the manager of the Foundation, and that these obvious conflicts damaged the plaintiffs' legatees. Considering their allegations, the plaintiffs prayed for judgment that the Succession be reopened; that a new executor be appointed by the court to represent the Succession; that the court order an expert be appointed to value the correct percentage BR & R should have transferred to the seven legatees equal to $1,004,181.82; and that the court find that Mr. Roberts violated his fiduciary duties owed to the Succession in his capacity as independent executor and was liable for all damages to the legatees.

In response to the plaintiffs' claims to reopen the Succession, Mr. Roberts filed Peremptory Exceptions of Compromise and/or Acceptance of Legacy, No Cause of Action, and Nonjoinder of Party Needed for Just Adjudication; and Dilatory Exception of Vagueness. Mr. Roberts asserted that no interested party opposed or objected to any of the actions taken by him pursuant to his role as independent executor; that the petition was devoid of any factual allegations suggesting that the plaintiffs were unable to traverse the detailed descriptive list, object to the Petition for Possession, or appeal the Judgment of Possession; and that the plaintiffs unconditionally accepted their legacies without objection. Mr. Roberts averred that since taking their respective legacies three years prior, they had exercised rights indicative of acceptance and ownership of the estate assets, thereby legally precluding them from the relief they sought.[6] Further, Mr. Roberts contended that the plaintiffs failed to identify a proper cause to reopen the Succession; that they failed to sufficiently articulate the factual predicate for their claim that he breached his duty; and that the plaintiffs' petition failed to state a cause of action. Alternatively, Mr. Roberts asserted that the plaintiffs failed to join all necessary parties

---

[6] Mr. Roberts asserted that Carole Mury Higginbotham received an extraordinary cash distribution of $400,000.00 and that Marie Tassin McDonald was elected a manager of BR & R, as reflected in resolutions of the managers of BR & R dated March 12 and 15, 2020, respectively.

5

for just adjudication of the matter and that the petition to reopen the Succession was insufficiently vague. The plaintiffs opposed the exceptions, and Mr. Roberts filed a reply to the opposition.

On June 13, 2023, the trial court held a hearing on the exceptions.[7] Marie Tassin McDonald, Carol Mary Higginbotham, and Mrs. Caballero testified at the hearing. The legatees testified that they accepted their legacies, and counsel for the plaintiffs stipulated to the fact that the plaintiffs all accepted their legacies. Mr. Caballero also testified. At the conclusion of the hearing, the trial court found that the plaintiffs accepted their legacies and acquiesced in the Judgment of Possession. The trial court stated:

> Somebody had to make a decision how to divide the property and what the discounts will be. ... [T]he person who makes the decision is only charged with making a reasonable determination, and there has been no objection to that timely in the Court's opinion to overturn what Randall Roberts did in this matter. ... And I just don't think anything – taking this to three different CPA firms and them hackling (sic) over what is a proper discount rate and so forth. I think that you have a choice to select any of them and any of them would be reasonable within the framework of what was done.

Consequently, the trial court sustained his peremptory exceptions raising the objection of the acceptance of the legacy and of no cause of action. As a result, the trial court denied Mr. Roberts' peremptory exception objecting to the nonjoinder of parties. The trial court also denied the dilatory exception raising the objection of vagueness. On August 9, 2023, the trial court signed a judgment and dismissed with prejudice all claims and causes of action asserted by the plaintiffs.

Thereafter, Mrs. Caballero appealed.[8] In her appeal, Mrs. Caballero contends that the trial court erred in 1) granting the acceptance of legacy exception, finding that Mrs. Caballero acquiesced in the judgment; 2) granting the exception raising the objection of no cause of action regarding the claim for breach of fiduciary duties against Mr. Roberts as independent executor; 3) granting the exception raising the objection of no cause of action regarding the claim to reopen the Succession, finding that Mrs. Caballero

---

[7] We note that no evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. In this matter, the trial court first heard argument on the peremptory exception raising the objection of no cause of action and then took evidence on the other exceptions.

[8] By the time of the hearing on the exceptions, Marie Tassin McDonald, Claire Tassin Combs, and Carol Mury Higginbotham requested that they be removed from the suit, and they did not appeal the August 9, 2023 judgment. Only Mrs. Caballero filed a Motion and Order for Devolutive Appeal.

acquiesced in the judgment; and 4) granting the exception raising the objection of no cause of action without specifically addressing the allegations contained in the petition.

## DISCUSSION

Pertinent to this appeal are the peremptory exceptions raising the objections of no cause of action and acceptance of legacy as asserted by Mr. Roberts.[9] The peremptory exception raising the objection of no cause of action is used to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. **Benoist v. Jackson National Life Insurance Company**, 2022-0878 (La.App. 1 Cir. 4/14/23), 364 So.3d 1162, 1165. The purpose of the exception of no cause of action is not to determine whether the plaintiff will ultimately prevail at trial, but to only ascertain if a cause of action exists. **Benoist**, 364 So.3d at 1165-66. No evidence may be introduced to support or controvert the exception of no cause of action. LSA-C.C.P. art. 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pled facts in the petition must be accepted as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Benoist**, 364 So.3d at 1166.

The petition must set forth material facts upon which the cause of action is based. LSA-C.C.P. art. 891(A); **Christian Schools, Inc. v. Louisiana High School Athletic Association**, 2020-0762 (La.App. 1 Cir. 5/18/22), 342 So.3d 1068, 1074, writ denied, 2022-01015 (La. 10/12/22), 348 So.3d 78. Additionally, the correctness of conclusions of law is not conceded for the purposes of a ruling on an exception of no cause of action.[10] **Christian Schools, Inc.**, 342 So.3d at 1075.

In this matter, Mrs. Caballero asserts that the sole basis for seeking to reopen the Succession is that her 9.9364044 percent membership interest in BR & R did not equal a

---

[9] Louisiana Code of Civil Procedure article 927 provides a non-exhaustive list of permissible objections raised by peremptory exception. While the objection of acceptance of legacy is not included in the list, LSA-C.C.P. art. 927 states that permissible peremptory exceptions are not limited to the listed examples. See **Reyer v. Milton Homes, LLC**, 2018-0580 (La.App. 1 Cir. 2/25/19), 272 So.3d 604, 607. However, based on our findings herein, we do not address whether the objection of acceptance of legacy is a valid peremptory exception.

[10] Further, when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed. LSA-C.C.P. art. 934; **Christian Schools, Inc.**, 342 So.3d at 1075.

cash value of $1,004,181.82 at the time of Ms. Barbier's death. Louisiana Code of Civil Procedure article 3393(B) provides:

> After formal or informal acceptance by the heirs or legatees or rendition of a judgment of possession by a court of competent jurisdiction, if other property is discovered, **or for any other proper cause**, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any succession proceedings had been filed in court. The court may appoint or reappoint the succession representative, if any, or may appoint another, or new, succession representative. The procedure provided by this Code, for an original administration, shall apply to the administration of successions formally or informally accepted by heirs or legatees and in successions where a judgment of possession has been rendered, in so far as same is applicable.

(Emphasis added). Thus, a trial court may reopen a succession under LSA-C.C.P. art. 3393 for only two reasons, that is, if other property is discovered or for any other proper cause. **Succession of McCarthy**, 583 So.2d 140, 141 (La.App. 1 Cir. 1991). As no other estate property has been discovered, the question before us is whether "other proper cause" exists to allow reopening of the succession.

The basic purpose of LSA-C.C.P. art. 3393 is to provide a means for dealing with overlooked succession assets. **Succession of Villarrubia**, 95-2610 (La. 9/5/96), 680 So.2d 1147, 1150. See also Katherine Shaw Spaht, Developments in the Law 1985-1986 Part I: A Faculty Symposium, 47 La.L.Rev. 471, 484 n.47. In **Villarrubia**, the supreme court stated that courts have found "other proper cause" under LSA-C.C.P. art. 3393 to exist under extremely limited circumstances, such as where a valid will is discovered after the administration of an intestate succession, citing **Succession of McLendon**, 383 So.2d 55 (La.App. 2 Cir. 1980). **Villarrubia**, 680 So.2d at 1150. Successions are not reopened to allow for collation, for the assertion of forced heirship rights, or for error of law.[11] **Villarrubia**, 680 So.2d at 1150.

---

[11] In **Villarrubia**, a legatee had agreed to accept his legacy and have his uncles put in possession of the remainder of the estate. However, the law under which he concluded that he had no further rights as a forced heir was subsequently declared unconstitutional. The legatee then sought to reopen the succession to assert those forced heirship rights that had existed prior to the enactment of the unconstitutional statute. **Villarrubia**, 680 So.2d at 1149. The supreme court rejected this attempt because the asserted other proper cause was based an error of law. The supreme court stated that it realized the ruling was "harsh, but if the law allowed judgments of possession to be overturned because of error of law or change in the law, the sanctity of such judgments would be seriously impaired." **Villarrubia**, 680 So.2d at 1152.

In **Succession of McCarthy**, 583 So.2d 140 (La.App. 1 Cir. 1991), this court was tasked with determining whether the trial court correctly maintained an exception of no cause of action. The judgment of possession at issue in **McCarthy** granted a surviving spouse a usufruct for life, even though the testament only confirmed a legal usufruct without any express grant for life, which, under the law at that time, terminated upon remarriage. When the surviving spouse remarried, the decedent's children attempted to reopen the succession to correct the judgment to reflect that the usufruct terminated at remarriage. This court, in applying LSA-C.C.P. art. 3393(B), and in the absence of discovered property inadvertently omitted, confirmed that the only available reason for reopening the succession was "proper cause." **McCarthy**, 583 So.2d at 142. This court affirmed the trial court's finding of no "proper cause" to reopen the succession, given the trial court's discretion to reopen a succession and considering that the children had unconditionally accepted a lifetime usufruct. **Id**. Therefore, we concluded that there was no error by the trial court in maintaining the peremptory exception raising the objection of no cause of action where the children had unconditionally accepted the succession and no proper cause to reopen the succession was found. **Id**.

Jurisprudence from other circuits also reflects the limited circumstances wherein proper cause existed to reopen a succession. In **In re Succession of Williams**, 99-245 (La.App. 5 Cir. 7/27/99), 738 So.2d 1185, 1187, writ denied, 99-2568 (La. 11/19/99), 749 So.2d 679, the two daughters of the decedent participated in the succession as petitioners, recited that their forced heirship rights had been satisfied, and filed affidavits of death and heirship representing that their mother had left the will at issue. The fifth circuit recognized that because there was no newly discovered property, the only other ground upon which the succession may have been reopened was for "any other proper cause," and therefore, the issue to be decided was whether the daughters' allegations that the statutory will was improperly executed constituted "proper cause." **Id**. The fifth circuit found that the daughters acquiesced in the distribution of their mother's assets to their stepfather pursuant to the will. The court concluded that under these circumstances, and considering the interpretation of the "any other proper cause"

9

language of LSA-C.C.P. art. 3395(B), the trial court abused its discretion in reopening the succession based on the grounds urged by the daughters. **Id**.

In **In re Succession of Chatelain**, 2000-1267 (La.App. 4 Cir. 5/16/01), 788 So.2d 620, 622, the mother's testament called for her two sons, Nelson and Farrell, to be coexecutors. Unable to obtain cooperation from Farrell after many attempts to communicate, Nelson opened his mother's succession and obtained a judgment of possession. Farrell accepted his share of his mother's estate and negotiated several checks that disbursed estate proceeds in accordance with the judgment of possession. Once the distributions ceased, Farrell filed a petition to reopen the succession. After reviewing the facts presented and the applicable jurisprudence, the fourth circuit found that there was no "proper cause" to allow the reopening of the succession, and the trial court did not abuse its discretion in refusing to do so. See also **Succession of Yancovich**, 289 So.2d 855, 858-59 (La.App. 4 Cir. 1974) (where it was held that the alleged discovery of facts, seven years after the closing of the succession, showing that the succession inventory may have incorrectly adjudicated property to an alleged non-existent community of acquets and gains was not sufficient "other proper cause" under Article 3393 to open the succession).

In **Succession of Lasseigne**, 488 So.2d 1303 (La.App. 3 Cir.), writ denied, 494 So.2d 327 (La. 1986), the heirs disputed the division of property after all heirs had accepted the succession unconditionally and consented to the judgment of possession. One heir sought to reopen the succession to assert his forced heirship right ten years later. The third circuit found no proper cause to reopen the succession because no creditor was demanding payment of a debt, no overlooked assets sought to be recovered for distribution among the heirs had been found, and "all of the heirs had purely, simply and unconditionally accepted this succession." **Lasseigne**, 488 So.2d at 1306.

Mrs. Caballero cites this court's decision in **In re Succession of Coon**, 2016-0240 (La.App. 1 Cir. 10/31/16), 207 So.3d 419, 424, for her argument that reopening the Succession was necessary to give effect to the testament as written. However, we find the **Coon** case to be distinguishable, as the succession in that matter was reopened

10

where the decedent, alleged to have died intestate, actually left a valid testament, which finding clearly established "proper cause" to reopen the succession.

In **In re Succession of DiLeo**, 2011-1256 (La.App. 4 Cir. 3/21/12), 90 So.3d 488, 494, writ denied, 2012-1025 (La. 6/22/12), 91 So.3d 976, also cited by Mrs. Caballero, the trial court amended the judgment of possession to reflect specific language of the testament regarding a usufruct. Therefore, there was no substantive change to the judgment of possession, and the trial court did not decide the issue of whether to reopen the succession under LSA-C.C.P. art. 3393(B).

In this appeal, Mrs. Caballero argues that the trial court erred in finding that acceptance of the legacy alone prohibits the opening of the Succession. She contends that if her petition states a cause of action for either her claim to reopen the Succession based on other proper cause or for breach of fiduciary duty, the trial court erred in granting the peremptory exception raising the objection of no cause of action. Mrs. Caballero maintains that she clearly stated "other proper cause" to open the Succession and a claim for breach of fiduciary duty.

To the contrary, Mr. Roberts contends that through the Final Judgment of Possession, as well as the amended and corrected judgment of possession, Mrs. Caballero participated in the distribution of Ms. Barbier's estate and accepted the distribution of membership interest to her without objection, precluding Mrs. Caballero from any reevaluation. Particularly, Mr. Roberts points out that upon taking possession of her legacy, Mrs. Caballero became a member of BR & R and that she subsequently transferred all of her membership interest in BR & R to another limited liability company that she owned with her husband, Dennis Caballero, for estate planning purposes.[12] Therefore, according to Mr. Roberts, based on all of her actions and not just the acceptance of the legacy, Mrs. Caballero cannot now object to the terms of the Final Judgment of Possession by reopening the Succession under LSA-C.C.P. art. 3393(B), as there was no "other proper cause" to do so.

---

[12] At some point, Mr. Caballero also became a manager of BR & R.

We agree with Mrs. Caballero that acquiescence alone is not a complete bar to the reopening of a succession, but it is a factor to consider in determining whether proper cause exists. As previously stated, the issue to be determined is whether proper cause exists to reopen Ms. Barbier's Succession.

Mrs. Caballero asserted in her petition that the sole basis of seeking to reopen the Succession was because her 9.9364044 percent interest in BR & R was not equal in value to a cash payment of $1,004,181.82 at the time of Ms. Barbier's death. Therefore, she contended that the Judgment of Possession, as originally filed and as amended, was not in compliance with Ms. Barbier's testament. Mrs. Caballero also set forth the underlying facts in this matter, which are essentially undisputed, including the allegations that Mr. Roberts relied on the valuation report of P&N to value Ms. Barbier's membership interest in BR & R as of the date of her death and that Dienes issued its own valuation report regarding the Foundation's minority ownership interest in BR & R. It is also undisputed that Mrs. Caballero did not appeal the Final Judgment of Possession, as amended, seek a new trial, or bring an action for nullity. Furthermore, Mrs. Caballero waited three years before filing her petition to reopen the Succession. Considering all of the allegations of Mrs. Caballero's petition, and accepting them as true, we find that Mrs. Caballero's claim of improper valuation combined with her acquiescence failed to establish proper cause to reopen the Succession. Accordingly, she has failed to state a cause of action as to this claim.

Likewise, accepting as true all of the allegations in the petition, we find that Mrs. Caballero has failed to state a cause of action on her claims for breach of the fiduciary duties of Mr. Roberts. The essence of the fiduciary duty lies in the special relationship between the parties. **Beckstrom v. Parnell**, 97-1200 (La.App. 1 Cir. 11/6/98) 730 So.2d 942, 947. A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority. **Destiny Services, L.L.C. v. Cost Containment Services, L.L.C.**, 2010-1895 (La.App. 1 Cir. 9/20/11), 2011 WL 4375318, *3 (unpublished).

A thorough review of Mrs. Caballero's allegations show that she has failed to allege specific facts sufficient to constitute a breach of any fiduciary duty. Mrs. Caballero has

12

alleged only supposed conflicts of interest in that Mr. Roberts wears three "hats" that prevent him from acting solely in the best interests of the Succession. A mere conflict of interest between the succession representative and the heirs is not a sufficient ground for the removal of the succession representative, **Succession of Dunham**, 408 So.2d 888, 898 (La. 1981), and allegations of conflict of interest are not sufficient to reopen a succession, see **In re Succession of Delegal**, 2001-1581 (La.App. 3 Cir. 4/3/02), 813 So.2d 1202, 1204-05. See also LSA-C.C.P. art. 3191(A).

Whether a succession will be reopened is in the sound discretion of the trial court. **Villarrubia**, 680 So.2d at 1150. Considering the allegations of Mrs. Caballero's petition to reopen the Succession, and the particular facts as alleged, as well as applicable jurisprudence under LSA-C.C.P. art. 3393, we find no error by the trial court in refusing to reopen the Succession, as Mrs. Caballero has failed to establish "other proper cause" pursuant to LSA-C.C.P. art. 3393. Furthermore, Mrs. Caballero has failed to state a cause of action for breach of fiduciary duty. Accordingly, we find that the trial court did not err in sustaining the defendant's peremptory exception raising the objection of no cause of action and in dismissing Mrs. Caballero's claims with prejudice.[13]

## CONCLUSION

For the reasons stated herein, the August 9, 2023 judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Cecile Ourso Caballero.

**AFFIRMED.**

---

[13] When asked if the plaintiffs would be given the opportunity to amend the lawsuit, the trial court explained that it could not "come up with a theory by which they can amend" and dismissed the suit with prejudice. On appeal, Mrs. Caballero did not assign this as error and has not requested the opportunity to amend her petition.

Additionally, having found that the trial court properly sustained the peremptory exception raising the objection of no cause of action, we pretermit discussion regarding Mr. Robert's peremptory exception raising the objection of acceptance of legacy.